[No. S036641. June 5, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFTON C. WIMS et al. Defendants-and Appellants.

**COUNSEL**

Susan D. Shors, John Halley, Alex Reisman and Eric S. Multhaup, under appointments by the Supreme Court, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan, Thomas A. Brady, Ronald S. Matthias, Clifford K. Thompson and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WERDEGAR, J.**—In this case we decide what standard a reviewing court must apply when deciding whether a trial judge's failure to instruct the jury as to the factual elements necessary to support a sentence enhancement for use of a deadly and dangerous weapon, under Penal Code section 12022, subdivision (b),[1] is prejudicial. Section 12022(b) imposes an additional term of one year upon "[a]ny person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony."[2] We conclude that failure to instruct the jury as to all of the elements of section 12022(b) is prejudicial only where it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Applying that standard, we further conclude the trial court's error in this case was not prejudicial as to either defendant Clifton C. Wims or as to defendant Wilbert Ford. Accordingly, we reverse the judgment of the Court of Appeal insofar as it vacated the trial court's imposition, under section 12022(b), of one-year sentence enhancements for Wims's and Ford's use of a deadly or dangerous weapon. In all other respects, we affirm.

*Facts*

On the evening of November 12, 1991, Paige D'Agostino and his fiancée Elizabeth Gebhardt were walking home from the Powell Street BART (Bay

---

[1]Hereafter section 12022(b). Unlabeled statutory references are to the Penal Code.

[2]At relevant times, section 12022(b) read in its entirety: "Any person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one year, unless use of a deadly or dangerous weapon is an element of the offense of which he or she was convicted. [¶] When a person is found to have personally used a deadly or dangerous weapon in the commission or attempted commission of a felony as provided in this subdivision and the weapon is owned by that person, the court shall order that the weapon be deemed a nuisance and disposed of in the manner provided in Section 12028."

Area Rapid Transit) station in San Francisco when they noticed defendant Wims and a woman involved in an altercation. Someone asked D'Agostino and Gebhardt for spare change, and they said they had none. Suddenly, Ford grabbed D'Agostino around the neck from behind and pulled him backward. Wims hit D'Agostino twice in the head with a crutch and then struck him in the face and chest with his fists. Ford then swung D'Agostino into the crosswalk, where he landed on his knees. Ford and Wims began pulling on D'Agostino's black leather jacket. Codefendant Carolyn Gipson[3] pushed Gebhardt and hit her in the head. Ford continued to pull on D'Agostino's jacket and then held a knife eight inches from his face and threatened to "cut [him] up" if he didn't let go of the jacket. D'Agostino and Gebhardt continued walking. D'Agostino was bleeding profusely from his nose, mouth and cheek. Tom McCoy, a passing motorist and off-duty security guard, spoke with D'Agostino and Gebhardt and contacted the police.

According to Gebhardt, as Wims hit D'Agostino with the crutch, Ford held him and said, "Give us your money." After Wims beat D'Agostino with the crutch, he threw it down, and Gebhardt saw him holding a knife. Gipson displayed another knife and threatened Gebhardt with it. Gebhardt testified Ford also had a knife, but on cross-examination acknowledged she had told police she was not sure if either Ford or Wims had a knife, since she had been concerned about Gipson's knife. After the incident, Gebhardt accompanied police to the scene and identified Wims, Ford and Gipson as the perpetrators. As police approached, Wims threw down a set of keys identified by Gebhardt as belonging to her and D'Agostino. Ford and Wims each possessed a knife when arrested.

McCoy, the passing motorist, testified he saw Wims hitting a White man and Ford pulling at the man's jacket. McCoy also testified both Wims and Ford were holding knives. He acknowledged, however, he had told police about only one knife. He had not mentioned a second knife because he had not specifically been asked about a second knife.

Finally, Gipson, testifying in her own defense, stated she first saw Ford, and then Wims, with a knife.

Defendants Wims, Ford and Gipson were each charged by information with second degree robbery (against D'Agostino) (§ 212.5, subd. (b)) and assault with a deadly weapon and by means of force likely to produce great bodily injury (against Gebhardt) (§ 245, subd. (a)(1)). In connection with the robbery count, it was further alleged that "in the commission and attempted commission of the above offense, the defendants, WILBERT FORD, CAROLYN

---

[3]Gipson has not appealed.

JEAN GIPSON, and CLIFTON C. WIMS, personally used a deadly and dangerous weapon, to wit, KNIFE, said use not being an element of the above offense within the meaning of Penal Code section 12022(b)."

Wims was also charged, in the alternative to the robbery charge, with receiving stolen property, i.e., Gebhardt's keys. Ford was alleged to have suffered two prior serious felony convictions (both robberies, one in Missouri and one in California).

The charges against defendants Ford, Wims and Gipson were tried to a jury. After the People rested, the court granted motions to dismiss the assault charge as to Ford and Wims.

After evidence had been presented, the court instructed the jury on general matters, elements of the charged offenses, and lesser included offenses. The court did not specifically instruct the jury on the elements of a section 12022(b) enhancement. The court did instruct the jury on aiding and abetting liability.

In closing argument, the prosecutor noted the robbery count in the information "also has a knife allegation, each of them used a knife while in the commission of this crime." She also reviewed some of the evidence dealing with knife use:

"Underneath the robbery charge [on the verdict forms] as I mentioned there is a knife allegation. It's alleged that each of these three defendant[]s used a knife in the commission of the robbery. . . . I think you will agree that there was testimony that defendant Ford had a knife. In fact, there's a knife that was taken from him that evening and booked and it's the knife that was marked as People's 5B, the knife identified as being similar to what they saw defendant Ford have in his possession that night.

"With respect to defendant Wims . . . [Gebhardt] stated that defendant Gipson had a long knife which is consistent with [People's exhibit 5C], but she also stated that defendant Wims had a knife as did Mr. McCoy [the passing motorist]. This [People's exhibit 5C], however, is the knife that was taken from the back of defendant Wims' pocket when he was arrested for this charge. So far while we have two knives and not three, you may be asking yourself; well . . . where's the third knife? Well, unfortunately I don't know where the third knife is. Maybe she does. However, I don't. But, in any event, Elizabeth Gebhardt clearly . . . saw a knife being waved in front of her face and [heard] defendant Gipson saying, "Let go of the jacket or I'll cut you. . . . So the knife allegation is as to all three and I think the evidence suggests it."

In closing argument, Ford's defense counsel acknowledged D'Agostino was assaulted and did not dispute the evidence that D'Agostino's attacker (Ford, according to the prosecution) used a knife. Ford's counsel argued only that Ford was misidentified and was not one of the robbers. He conceded Ford had a knife when arrested, but contended that circumstance did not prove Ford was involved in the robbery. He said Gebhardt's identification of Ford was unreliable, because previously Gebhardt told police she was not completely sure if she saw one knife or two and because she was focusing on the knife being held at D'Agostino's throat, not on the person who was holding it. D'Agostino's identification of Ford was also flawed, said Ford's counsel, because D'Agostino would have been focusing on the knife rather than the knife holder.

Wims's counsel argued that Wims was "probably guilty of some other things, but he is not guilty of robbery," because he lacked the intent to take property. He said: "Clearly he jumped into the assault. You know, Mr. Wims is no boyscout. What you see in evidence is definitely not a boyscout knife."

As the People concede, the trial court did not instruct the jury on the elements of section 12022(b) except in reviewing the verdict forms. The court said: "If and when you reach a verdict as to [the robbery] count, then your foreperson is to fill in the appropriate word, guilty or not guilty, date it and sign it. This instruction has a further requirement on you [sic]. 'We further find that the use of the deadly weapon allegation, violation of Penal Code section 12022(b) to be,' there's another blank, 'true or not true.' And when you reach a verdict as to this particular allegation, then your foreperson is to write in the correct true or not true, date it and sign it. And this is the same as to each of the three defendant[]s."

During deliberations, the jury inquired in writing of the court whether a crutch constitutes a deadly weapon. The court answered that "it could under some circumstances. However, there's no allegation here against Mr. Wims regarding the use of a deadly weapon, to wit, a crutch . . . . [¶] He is charged with using a deadly weapon in the commission of a robbery. However, by the terms of the pleadings it's limited to the knife. [¶] So whether or not a crutch is a deadly weapon or not, is really irrelevant . . . ."

The jury also asked for "[a] copy of/or reading of Mr. D'Agostino's and Mr. McCoy's testimony regarding the presence/display or lack of presence/ display of a knife during the incident by Mr. Wims." The court responded: "My court reporter has gone through the entire transcripts of the proceedings, finds no reference to any questions asked of Mr. D'Agostino one way or the other as to whether or not Mr. Wims had a knife, displayed a knife,

any—there is one reference in Mr. McCoy's testimony which she's prepared to read to you at this time." The court then stated the court reporter would print a portion of the transcribed testimony and provide the printed portion to the jury.

The jury delivered written general verdicts finding defendants Ford and Wims each guilty of second degree robbery as charged. The jury further found the section 12022(b) allegation true as to defendants Ford and Wims.

The jury acquitted defendant Gipson of the robbery charge, found the weapon use allegation not to be true as to her, and found her guilty of misdemeanor battery as a lesser included offense of the assault charge.

Defendant Ford waived his jury trial right on the prior serious felony conviction allegation. The court found Ford had suffered one prior serious felony conviction. Ford was sentenced to a term of eleven years (comprised of the upper term of five years for robbery, plus one year for the section 12022(b) enhancement and five years for the prior serious felony conviction enhancement). Defendant Wims was sentenced to a term of six years (comprised of the upper term of five years for robbery, plus one year for the section 12022(b) enhancement).

Defendants Ford and Wims (hereafter defendants) complained on appeal the trial court erred in failing to instruct the jury as to the elements of the section 12022(b) enhancement allegation. The Court of Appeal held in favor of defendants and reversed the section 12022(b) enhancements. We granted the People's petition for review.

*Discussion*

A. · *Did the Trial Court Commit Error?*

█ In order to find "true" a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death. (*People* v. *James* (1978) 88 Cal.App.3d 150, 160 and fn. 2 [151 Cal.Rptr. 354] [approving CALJIC No. 17.16]; see also CALJIC No. 17.16 and com. to No. 17.16 (5th ed. 1988) [approved jury instruction for section 12022(b) violations indicating definition of "used a deadly or dangerous weapon" is adapted from section 1203.6]; cf. *People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153] [deadly weapons are those designed for deadly use or used in such a manner]; *People* v. *Jacobs*

(1987) 193 Cal.App.3d 375, 381 [238 Cal.Rptr. 278] [firearm is "used" within meaning of section 12022.5 if victim senses its presence and there is threat of use sufficient to produce fear of harm].)

The trial court failed to instruct defendants' jury as to the factual elements the prosecution was required to prove before the jury could properly find true the section 12022(b) allegations. The trial court only read to the jury the verdict forms, which simply referred to "the Use of Deadly Weapon Allegation."[4]

In criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to and governing the case. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1]; see also *People* v. *Hood* (1969) 1 Cal.3d 444, 449 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Graham, supra,* 71 Cal.2d 303, 318.) In this case, the court's omission of CALJIC No. 17.16 or an equivalent instruction, mitigated only by the court's reading of the "deadly weapon use" verdict form and the prosecutor's discussion of the "knife allegation," left the jury uninformed as to all of the factual elements necessary to a "true" finding under section 12022(b).

We have held a defendant is entitled to proper jury instructions regarding the meaning of a weapon use enhancement allegation which is tried to a jury. (*People* v. *Najera* (1972) 8 Cal.3d 504, 510 [105 Cal.Rptr. 345, 503 P.2d 1353] (regarding § 12022.5; approved in part and disapproved in part *People* v. *Wiley* (1995) 9 Cal.4th 580, 588 (38 Cal.Rptr.2d 347, 889 P.2d 541)].) The People do not dispute defendants were entitled to proper jury instructions regarding the meaning of section 12022(b), nor that the instructions given in this case were flawed. Plainly, the trial court erred in not instructing defendants' jury on the factual elements of a section 12022(b) enhancement.

Trial court error, of course, does not necessarily mandate reversal. The question remains whether the instructional error was prejudicial.

**B. *Did the Trial Court's Error Violate the Federal Constitution?***

**1. *Jury Trial***

 Defendants argue the trial court's error impaired their right to trial by jury under the Sixth Amendment as incorporated in the Fourteenth Amendment. We disagree.

---

[4]The portion of the verdict form respecting section 12022(b) read, in its entirety:
"We further find the Use of Deadly Weapon Allegation (Violation of Penal Code Section 12022(b)[)] to be _____."
True [or] Not True

Defendants, we emphasize, do not claim error in connection with the substantive offenses with which they were charged. Rather, their claim of error relates only to the trial court's instructions on the section 12022(b) sentence enhancement allegations. State law, not the federal Constitution, is the source of defendants' right to a jury trial on the section 12022(b) allegations, and the state right, moreover, is conditional on the underlying offense being tried to a jury. (See § 969c.)[5] There simply is "no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." (*McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 93 [91 L.Ed.2d 67, 80-81, 106 S.Ct. 2411], citing *Spaziano* v. *Florida* (1984) 468 U.S. 447, 459 [82 L.Ed.2d 340, 352, 104 S.Ct. 3154].)

Defendants argue the court's instructional omissions implicated their Sixth Amendment rights because section 12022(b) shares fundamental analytical and functional characteristics of a "crime," although it is designated an "enhancement." That an enhancement resembles a substantive offense, insofar as it imposes additional punishment based upon a factual finding that a defendant engaged in particular conduct, may be true. Such similarity, however, does not elevate to federal constitutional stature defendants' section 12022(b) jury rights.

California courts have long recognized that "[a]n enhancement is not a separate crime or offense . . . ." (*People* v. *Waite* (1983) 146 Cal.App.3d 585, 593 [194 Cal.Rptr. 245], disapproved on other grounds *People* v. *Jones* (1988) 46 Cal.3d 585, 592-594 [250 Cal.Rptr. 635, 758 P.2d 1165]; see also *People* v. *Bouzas* (1991) 53 Cal.3d 467, 479 [279 Cal.Rptr. 847, 807 P.2d 1076]; *In re Shull* (1944) 23 Cal.2d 745, 749 [146 P.2d 417] [discussing predecessor to section 12022]; *People* v. *Turner* (1983) 145 Cal.App.3d 658, 684 [193 Cal.Rptr. 614].) "As defined in the Rules of Court, an enhancement 'means an additional term of imprisonment added to the base term.' " (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 207 [249 Cal.Rptr. 850, 757 P.2d 1013], quoting Cal. Rules of Court, rule 405(c), and citing Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 22-24.) "Enhancements typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves." (*People* v. *Hernandez, supra,* 46 Cal.3d at pp. 207-208.)

---

[5]In pertinent part, section 969c provides: "If the defendant pleads not guilty of the offense charged in any count which alleges that the defendant used a weapon or was armed with a firearm, the question whether or not he used a weapon or was armed with a firearm as alleged must be tried by the court or jury which tries the issue upon the plea of not guilty. If the defendant pleads guilty of the offense charged the question whether or not he used a weapon or was armed with a firearm as alleged *must be determined by the court* before pronouncing judgment." (Italics added.)

Section 12022(b) provides for "an additional term of one year['s]" imprisonment to be added to the base term of a felony conviction. That section 12022(b) "includes[] element[s] in addition to those necessary to prove" the underlying felony "certainly does not imply it has defined a new crime." (*People* v. *Hernandez, supra,* 46 Cal.3d at p. 207 [discussing section 667.8].) Rather, section 12022(b) merely focuses on a circumstance involved in the commission of some felonies (i.e., use of a "deadly or dangerous weapon") that the Legislature apparently believed justifies an additional penalty to that prescribed for the underlying felonies. Thus, as we have previously recognized in analogous circumstances, section 12022(b) articulates a *penalty provision,* not a substantive crime. (*People* v. *Hernandez, supra,* 46 Cal.3d at pp. 207-208; see also *People* v. *Smith* (1985) 163 Cal.App.3d 908, 913 [210 Cal.Rptr. 43] [discussing section 12022, subdivision (a)]; and *People* v. *Wolcott* (1983) 34 Cal.3d 92, 100 [192 Cal.Rptr. 748, 665 P.2d 520] [discussing section 12022.5].)

"The Sixth Amendment never has been thought to guarantee a right to a jury determination" of the appropriate punishment to be imposed on an individual. (*Spaziano* v. *Florida, supra,* 468 U.S. at p. 459 [82 L.Ed.2d at p. 352].) The Supreme Court, moreover, has specifically determined the Sixth Amendment does not require jury fact-finding when a statute—like section 12022(b)—makes weapon possession a sentencing factor rather than an element of a crime. (*McMillan* v. *Pennsylvania, supra,* 477 U.S. at pp. 89-90 [91 L.Ed.2d at pp. 78-79].)

In *McMillan* v. *Pennsylvania, supra,* 477 U.S. 79 (*McMillan*), the high court considered an aspect of the Pennsylvania Mandatory Minimum Sentencing Act of 1982, pursuant to which anyone convicted of an enumerated felony is subject to a mandatory minimum sentence of five years' imprisonment, if the sentencing judge finds, by a preponderance of the evidence, the person visibly possessed a firearm during the commission of the offense. The act does not authorize a sentence exceeding that otherwise allowed for the underlying offense, but divests the judge of discretion to impose any sentence of less than five years. (*Id.* at pp. 81-82 [91 L.Ed.2d at pp. 73-74]; see 42 Pa. Cons. Stat. § 9712 (1982).)

The high court in *McMillan* held the Pennsylvania act did not deny the defendants their Sixth Amendment right to trial by jury. (477 U.S. at p. 93 [91 L.Ed.2d at pp. 80-81].) Defendants acknowledge the *McMillan* decision, but argue section 12022(b) is different from the Pennsylvania law upheld there in ways that should trigger Sixth Amendment jury protection. Specifically, defendants note section 12022(b) permits the imposition of punishment exceeding that provided for the underlying offense, while the Pennsylvania law provided only for imposition of a mandatory minimum sentence

within a range already authorized for the underlying offense. While we discern the difference, we do not agree it should be dispositive.

In *McMillan*, the high court acknowledged a concern that state legislatures not circumvent due process by recharacterizing elements of offenses as sentencing factors. The court considered "the specter raised by petitioners of States restructuring existing crimes in order to 'evade' the commands of [due process] . . . ." (477 U.S. at p. 89 [91 L.Ed.2d at p. 78].) In concluding such concerns were not implicated by the Pennsylvania law, the court noted the enumerated felonies involved "retain the same elements they had before the Mandatory Minimum Sentencing Act was passed. The Pennsylvania Legislature did not change the definition of any existing offense." (*Ibid.*)

The Supreme Court concluded Pennsylvania's law "simply took one factor that has always been considered by sentencing courts to bear on punishment —the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an 'element' of some hypothetical 'offense.' " (*McMillan, supra*, 477 U.S. at pp. 89-90 [91 L.Ed.2d at pp. 78-79].)

Similarly, there is no indication our Legislature, in enacting section 12022(b), sought to circumvent due process by renaming, as a sentencing enhancement, an element of a greater offense. Section 12022(b) does not change the definition of any existing offense.[6] The Legislature's decision to impose an additional prison term for personal use of a deadly or dangerous weapon, a traditional sentencing factor, and to entrust the underlying factual determination to a jury (but only when the underlying offense is tried to a jury), does not transform section 12022(b) from a sentencing provision into a substantive offense.

In dissent, Justice Kennard suggests "the inference is strong that the Legislature must have intended enhancements to be the functional equivalent of criminal offenses." (Conc. and dis. opn. of Kennard, J., *post*, at p. 324.) Her opinion, however, cites neither statutory language nor legislative history

---

[6]Justice Kennard, in her concurring and dissenting opinion, directs our attention to *People v. Superior Court (Mendella)* 33 Cal.3d 754 [191 Cal.Rptr. 1, 661 P.2d 1081] (*Mendella*) for its discussion of "the historical antecedents of enhancements." (Conc. and dis. opn. of Kennard, J., *post*, p. 324.) *Mendella* is not apposite. We held there only that an enhancement allegation may be challenged by a motion to dismiss under section 995, basing our holding on "practical and policy considerations" and prior state court practice (*Mendella, supra*, 33 Cal.3d at pp. 760-763), not on the federal Constitution. We said nothing about jury rights or burdens of proof; nor did we question the distinction between a substantive offense and an enhancement. Rather, acknowledging the distinction, we noted simply that section 995 contained no language restricting its application to substantive offenses. (33 Cal.3d at p. 758.)

materials supporting such an inference. Nor does it explain why, if our Legislature intended a sentence enhancement to be "part of the criminal offense to which it is attached" (conc. and dis. opn. of Kennard, J., *post* at p. 318), it did not simply say so. When the Legislature wishes to create a substantive offense having as one of its elements another substantive offense, it knows how to do so. (See; e.g., § 666 [petit theft with a prior]; § 12021 [ex-felon in possession of firearm].)

■ Contrary to the dissent's suggestion, in our statutory scheme sentence enhancements are not "equivalent" to, nor do they "function" as, substantive offenses. Most fundamentally, a sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense. (See, e.g., section 12022(b), enhancing sentence only "upon conviction . . . .") At that time, a defendant's liberty interest "has been substantially diminished by a guilty verdict." (*McMillan, supra,* 477 U.S. 79, 84 [91 L.Ed.2d 67, 75].) The Legislature, moreover, has in various ways expressed its intention that enhancements *not* be treated as substantive offenses.[7]

While in *McMillan* the high "court made it clear that state legislatures do not have unfettered discretion to define the elements of an offense . . . it has consistently rejected any bright line test . . . ." (*Nichols* v. *McCormick* (9th Cir. 1991) 929 F.2d 507, 510.) We agree with the People that defendants mistake one factor underlying *McMillan* for the entire rationale. *McMillan*'s holding rests on several factors; that the disputed statute imposed a mandatory minimum sentence rather than increasing the maximum penalty was not

---

[7]For example:

(1) Section 12022(b) enhances a convicted felon's sentence *"unless use of a deadly or dangerous weapon is an element of the offense of which he or she was convicted."* (Italics added.) That it used the italicized language plainly demonstrates our Legislature understood that, contrary to the dissent's assertion, the conduct upon which this sentence enhancement is based is *not* "in essence, part of the [underlying] criminal offense . . . ." (Conc. and dis. opn. of Kennard, J., *post,* at p. 318.)

(2) Based upon "circumstances in mitigation of the additional punishment," under section 1170.1, subdivision (h), "the court may strike the additional punishment" for numerous enhancements, including section 12022(b). By contrast, under our determinate sentencing laws, when a defendant is convicted of a substantive offense the court is generally bound to impose punishment within prescribed ranges. (See § 1170.)

(3) A defendant who pleads guilty to the underlying offense has no right to a jury trial on a section 12022(b) enhancement. (See § 969c.) By contrast, a defendant charged with two substantive offenses obviously may plead guilty to one of them without losing his federal constitutional right to a jury trial on the other. That the Legislature created only a conditional jury trial right for section 12022(b) enhancements demonstrates it understood such a right was not constitutionally compelled and that the enhancement was not intended to be (or to function as if it were) equivalent to a substantive offense.

the most important. (See *McMillan, supra,* 477 U.S. at pp. 85-90 [91 L.Ed.2d at pp. 75-79].)

First, the high court in *McMillan* noted its traditional deference to state legislative judgment in "defining crimes and prescribing penalties." (*McMillan, supra,* 477 U.S. at pp. 85-86 [91 L.Ed.2d at pp. 75-76].) Second, in the challenged statute the Pennsylvania legislature was neither "discarding the presumption of innocence" (*id.* at p. 87 [91 L.Ed.2d at p. 77]) "[n]or . . . reliev[ing] the prosecution of its burden of proving guilt." (*Ibid.*) Third, the "Pennsylvania legislature did not change the definition of any existing offense" so as to circumvent due process requirements. (*Id.* at p. 89 [91 L.Ed.2d at p. 78].) Fourth, the disputed statute enhanced punishment based upon a "factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used . . . ." (*ibid.*) In light of these factors, the high court declared Pennsylvania's sentencing statute was constitutional. (*Id.* at p. 91 [91 L.Ed.2d at pp. 79-80]; see also *Nichols* v. *McCormick, supra,* 929 F.2d at p. 510.)

The United States Court of Appeals for the Ninth Circuit has applied the *McMillan* factors to a state sentencing statute similar in important respects to section 12022(b). In *Nichols* v. *McCormick, supra,* 929 F.2d 507, the Ninth Circuit upheld against a due process challenge a Montana weapons enhancement statute that imposed, for weapon use during an "offense," imprisonment of not less than two years or more than ten years "in addition to the punishment provided for the commission of" the offense. (*Nichols* v. *McCormick, supra,* 929 F.2d at p. 508 & fn. 1 [examining Mont. Code Ann. § 46-18-221 (1989)].)

In considering *McMillan*'s impact upon the Montana statute, the Ninth Circuit noted "the Montana statute, unlike that of Pennsylvania in *McMillan,* allows the sentencing court to impose a penalty in excess of that permitted by the underlying offense." (*Nichols* v. *McCormick, supra,* 929 F.2d at p. 510.) The court did not find this difference dispositive, noting the additional penalty factor was, under *McMillan,* only one of the "factors relevant to making this determination." (*Nichols* v. *McCormick, supra,* 929 F.2d at p. 510.) The court concluded that, as "Montana properly treats weapon use as a sentencing factor, it follows that there is no Sixth Amendment right to a trial by jury." (*Nichols* v. *McCormick, supra,* 929 F.2d at p. 509, citing *McMillan, supra,* 477 U.S. at p. 93 [91 L.Ed.2d at pp. 80-81].)

We agree with the Ninth Circuit that the "import of *McMillan* is that a state is free to define possession of a weapon as a sentencing factor." (*Nichols* v. *McCormick, supra,* 929 F.2d at p. 511.) Although defendants

have correctly noted section 12022(b) imposes an "additional term" beyond that provided for the underlying offense, nothing in *McMillan* suggests this fact of itself entitles defendants to a jury under the Sixth Amendment. As *Nichols* explains, the United States Supreme Court in *McMillan* rejected defendants' suggestion the imposition of additional punishment automatically triggers Sixth Amendment jury protection.

### 2. *Due Process*

■ Defendants argue the trial court's error arbitrarily deprived them of a state-created liberty interest in the exercise of jury sentencing discretion in contravention of *Hicks* v. *Oklahoma* (1980) 447 U.S. 343 [65 L.Ed.2d 175, 100 S.Ct. 2227]. We disagree.

In *Hicks*, a state law provided for discretionary jury determination of the punishment to be imposed. A state statute, however, mandated a 40-year term for habitual offenders. Finding defendant, who had been convicted of unlawfully distributing heroin, to be an habitual offender, the jury imposed the mandatory 40-year term. Thereafter, the habitual offender statute was declared unconstitutional. The appellate court nonetheless affirmed the sentence, concluding the defendant had not been prejudiced by application of the invalid statute, because the 40-year sentence was within the range of punishment for the underlying offense in any event. (*Hicks* v. *Oklahoma*, *supra*, 447 U.S. at pp. 344-345 [65 L.Ed.2d at pp. 178-179].)

In reversing, the high court stated "[w]here . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of liberty only to the extent determined by the jury in the exercise of its statutory discretion [citation] and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State." (*Hicks* v. *Oklahoma*, *supra*, 447 U.S. at p. 346 [65 L.Ed.2d at p. 180].) Because the jury had not determined the appropriate sentence (nor had the appellate court, as state law permitted, itself reconsidered its appropriateness), the Supreme Court held the defendant had been deprived of his liberty without due process. (*Id.* at p. 347 [65 L.Ed.2d at p. 180].)

Defendants here suffered no deprivation of state-mandated jury discretion analogous to that suffered by the defendants in *Hicks*. Defendants were not entitled under section 12022(b) to jury sentencing *discretion*; at most they were entitled to a jury finding on whether the section 12022(b) enhancement

allegation was true. (See *People* v. *Brown* (1988) 46 Cal.3d 432, 447-448 [250 Cal.Rptr. 604, 758 P.2d 1135] [distinguishing "[w]hen the 'result' under review is the product of a jury's *factfinding*" from "[a] capital penalty jury" which "is charged with a responsibility different in kind," i.e., "to render an individualized, *normative* determination about the penalty appropriate for a particular defendant"].) Defendants' jury, after all, *did* render verdicts on each weapon-use allegation. The rationale of *Hicks* therefore does not apply to section 12022(b). (See also *People* v. *Odle* (1988) 45 Cal.3d 386, 411-412 [247 Cal.Rptr. 137, 754 P.2d 184] [holding *Hicks* rationale not applicable to a failure to instruct on the elements of a special circumstance].)

The high court has made plain that *Hicks* does not invalidate every true finding rendered on a sentencing provision when the jury has received flawed instructions. (See *Clemons* v. *Mississippi* (1990) 494 U.S. 738 [108 L.Ed.2d 725, 110 S.Ct. 1441].) In *Clemons,* the court held the federal Constitution does not prevent a state appellate court from upholding a death sentence imposed by a jury "that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review . . . ." (*Clemons* v. *Mississippi, supra,* 494 U.S. at p. 741 [180 L.Ed.2d at p. 733].) In so holding, the high court noted that, "[c]ontrary to the situation in *Hicks,* the state [appellate] court in [*Clemons*] asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed . . . ." (*Clemons* v. *Mississippi, supra,* 494 U.S. at p. 747 [108 L.Ed.2d at p. 737].) "We specifically pointed out [in *Hicks*], however, that the [appellate court there] did not 'purport to cure the deprivation by itself reconsidering the appropriateness' of the 40-year sentence, [citation] thus suggesting that appellate sentencing, if properly conducted, would not violate due process of law." (*Ibid.*)

The high court's reasoning in *Clemons* applies to California's scheme for section 12022(b) sentence enhancements. Defendants' state statutory right to jury findings on a section 12022(b) enhancement is constitutionally qualified by the duty of California appellate courts to examine "the entire cause" when any "misdirection of the jury" is alleged and to affirm the judgment absent a "miscarriage of justice." (Cal. Const., art. VI, § 13.) Contrary to defendants' suggestion, therefore, if we examine the record of this trial to determine whether the instructional error resulted in a miscarriage of justice, we do not engage in any impermissible attempt to "substitute" our determination for the jury determination a defendant may claim under section 969c. Indeed, the possibility of such a corrective appellate determination is inherent in the state statutory scheme for jury determination. When rendered, such appellate

review complements, and thus affords, defendants their full jury rights and, thus, due process of law under *Hicks*. (Cf. *Clemons* v. *Mississippi*, *supra*, 494 U.S. at p. 747 [108 L.Ed.2d at p. 737] [rejecting the defendant's assertion he had an "unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances"].) For these reasons, defendants here cannot complain of the sort of deprivation suffered by the defendants in *Hicks*.

Nor did the court's failure to read CALJIC No. 17.16 or an equivalent instruction render defendants' trial fundamentally unfair. Contrary to defendants' suggestion, *People* v. *Hernandez*, *supra*, 46 Cal.3d 194 does not compel a contrary result.

In *Hernandez*, we concluded a sentencing judge may not constitutionally impose an additional three-year term under section 667.8 (kidnapping for purposes of rape) when no violation of that statute was pled or proven. (The allegation in *Hernandez* was mentioned for the first time in the probation report.) (*People* v. *Hernandez*, *supra*, 46 Cal.3d at p. 197.) In so concluding, we stated an enhancement statute "should [not] be read as a mere sentencing factor [but] rather [as] a finding which must be pled and proven before the trier of fact." (*Hernandez*, *supra*, 46 Cal.3d at p. 206, fn. omitted.)

Our decision in *Hernandez* depended upon a circumstance—lack of notice—not present in this case. Because the enhancement at issue had not even been pled, we said, "[i]t is possible that defendant failed to testify or otherwise put on additional evidence as to his degree of intoxication and precise mental state at the time of the crimes . . . . He did not know he faced . . . the section 667.8 enhancement . . . and from the prosecution's failure to plead section 667.8 he could reasonably assume the prosecution had chosen not to pursue it." (*People* v. *Hernandez*, *supra*, 46 Cal.3d at p. 209, fn. omitted.) Obviously, defendants here were not in an analogous situation; they knew from the outset they were facing section 12022(b) sentence enhancement allegations. The trial court's failure to read CALJIC No. 17.16 to the jury logically could not have diminished defendant's incentive to present evidence relating to section 12022(b), because such evidence, if presented at all, must be presented before the jury is instructed.

Most importantly, any discussion in *Hernandez* relating to the instructional omission was dictum, as our holding depended solely upon lack of notice. (*People* v. *Hernandez*, *supra*, 46 Cal.3d at pp. 197, 210-211.) It is true we noted no instruction had been given requiring that the jury find "the crucial fact" the defendant committed kidnapping with the specific intent to commit rape. (*People* v. *Hernandez*, *supra*, 46 Cal.3d at p. 211.) We did not,

however, rely on the instructional omission in holding that, "[a]s a matter of due process, the enhancement under section 667.8 could not be imposed . . . ." (46 Cal.3d at p. 208.) We found it "unnecessary to articulate a particular standard of review and engage in a harmless-error analysis when defendant's due process right to notice has been so completely violated." (*People* v. *Hernandez, supra,* 46 Cal.3d at pp. 208-209.)

*Hernandez,* therefore, is not authority for the proposition that failure to instruct the jury on the elements of a sentence enhancement violates the Fourteenth Amendment. *Hernandez* merely confirms that section 667.8 enhancements must be pled and proven by the prosecution. That the section 12022(b) enhancements at issue in this case were pled and proven to defendants' jury is undisputed.

■ Defendants also assert the jury instructions in this case created "structural defects in the constitution of the trial mechanism" (*Arizona* v. *Fulminante* (1991) 499 U.S. 279, 309 [113 L.Ed.2d 302, 331, 111 S.Ct. 1246]) such as would fall within the limited category of error that is reversible per se under the federal Constitution. We disagree. The trial court's failure to read CALJIC No. 17.16 neither wholly withdrew from jury consideration substantially all of the elements of a charged substantive offense (cf. *People* v. *Cummings, supra,* 4 Cal.4th 1233, 1315, citing *Carella* v. *California* (1989) 491 U.S. 263, 265, 267 [105 L.Ed.2d 218, 221-223, 109 S.Ct. 2419] and *Yates* v. *Evatt* (1991) 500 U.S. 391 [114 L.Ed.2d 432, 111 S.Ct. 1884]),[8] nor so vitiated all of the jury's findings as to effectively deny defendants a jury trial altogether. (Cf. *Sullivan* v. *Louisiana* (1993) 508 U.S. __ [124 L.Ed.2d 182, 113 S.Ct. 2078].)

Defendants were vigorously represented at trial by counsel who presented evidence and argument before a judge and jury whose impartiality is not

---

[8]Contrary to defendants' suggestion, our decision in *People* v. *Cummings, supra,* 4 Cal.4th 1233, does not govern this case. *Cummings* involved instructional error on the elements of a crime; this case involves instructional error on the elements of a sentencing provision. As discussed, it is "settled a defendant does not have a constitutional right to jury trial on penalty." (*People* v. *Robertson* (1989) 48 Cal.3d 18, 36 [255 Cal.Rptr. 631, 767 P.2d 1109], citing *Spaziano* v. *Florida, supra,* 468 U.S. 447.) In *Cummings* itself, we relied on this principle. In considering whether instructional error "as to the elements of the offense" of robbery was federal constitutional error, we contrasted the situation before us (involving "instructional error on the elements of a crime") with our earlier decision in *People* v. *Odle, supra,* 45 Cal.3d 386, which involved instructional error on the elements of a special circumstance allegation. (4 Cal.4th at pp. 1312-1313.) We stated, "there is no constitutional right to a jury trial on [the special circumstance] issue which, but for the statutory mandate, would be a sentencing issue." (*People* v. *Cummings, supra,* 4 Cal.4th at p. 1313.) Similarly, in this case, we face error in instructing, not on the elements of a crime, but on the elements of a sentencing provision.

disputed. Defendants thus received the " 'basic protectio[n]' " to which they were entitled. (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at p. __ [124 L.Ed.2d at p. 191, 113 S.Ct. at p. 2083], quoting *Rose* v. *Clark* (1986) 478 U.S. 570, 577 [92 L.Ed.2d 460, 470, 106 S.Ct. 3101].) The jury was charged with determining whether each defendant committed robbery and whether each used a deadly weapon. The jury was properly instructed on the elements of robbery and received some guidance (albeit incomplete) with respect to the weapon use allegation. The court's instructional error thus was not one which "either aborted the basic trial process [citation] or denied it altogether [citations]." (See *Rose* v. *Clark*, *supra*, 478 U.S. at p. 578, fn. 6 [92 L.Ed.2d at p. 470].) The jury was instructed to find the facts underlying its verdict true "beyond a reasonable doubt." There was no "misdescription of the burden of proof, which vitiates all the jury's findings." (Cf. *Sullivan* v. *Louisiana*, *supra*, 508 U.S. at p. __ [124 L.Ed.2d at p. 190, 113 S.Ct. at p. 2082].)

Finally, relying on *Morgan* v. *Illinois* (1992) 504 U.S. 719 [119 L.Ed.2d 492, 112 S.Ct. 2222], defendants assert federal due process requires the same standard of reversal be applied for a state violation of a state-conferred right to a jury trial as for a state violation of a federally mandated jury trial. Again, we do not agree.

In *Morgan* v. *Illinois*, *supra*, the high court affirmed that due process requires the exclusion from state-law-mandated capital sentencing juries of jurors who would automatically vote in favor of the death penalty. (504 U.S. at pp. 729-732 [119 L.Ed.2d at pp. 503-505, 112 S.Ct. at pp. 2230-2231].) The high court based its holding on "the requirement of impartiality embodied in the Due Process Clause of the Fourteenth Amendment" (*id.* at p. 729 [119 L.Ed.2d at p. 503, 112 S.Ct. at p. 2229]), an incident of due process defendants have not claimed was absent from their hearing. As relevant to this case, *Morgan* v. *Illinois* stands for no more than the indisputable proposition that defendants, being statutorily entitled to a jury trial, were therefore constitutionally entitled to " 'a fair trial by a panel of impartial, "indifferent' jurors" ' " (504 U.S. at p. 727 [119 L.Ed.2d at p. 501, 112 S.Ct. at p. 2228], quoting *In re Oliver* (1948) 333 U.S. 257 [92 L.Ed. 682, 68 S.Ct. 499]), that is, to fundamental fairness in the context of their jury trial. As previously discussed, defendants here were not denied fundamental fairness.

3. *Equal Protection*

■ Defendants also advance an equal protection argument, premised on the notion that "[d]efendants who face a substantial loss of liberty from a jury trial on an enhancement are similarly situated to defendants who face a

loss of liberty from a jury trial on an underlying offense." As a matter of federal constitutional law, defendants are simply wrong. A defendant whom the fact finder has determined committed an underlying offense has a substantially diminished liberty interest at risk in connection with any related sentencing determination. (See *McMillan, supra,* 477 U.S. at pp. 83-84 [91 L.Ed.2d at pp. 74-75.)

As we have recognized, the Legislature has classified personal use of a deadly or dangerous weapon during commission of a felony as a sentence enhancement, not a separate crime. (*People* v. *Hernandez, supra,* 46 Cal.3d at p. 207.) The Supreme Court has repeatedly indicated states have wide discretion in defining crimes and their elements. (See, e.g., *Patterson* v. *New York* (1977) 432 U.S. 197, 201-202 [53 L.Ed.2d 281, 286-287, 97 S.Ct. 2319]; *Schad* v. *Arizona* (1991) 501 U.S. 624, 636 [115 L.Ed.2d 555, 568, 111 S.Ct. 2491].) Like the high court, we reject defendants' contention that, because some elements of enhancements may be similar to elements of offenses, states are required to treat enhancement determinations exactly like determinations on substantive offenses.

██ In summary, the trial court's instructional omissions did not deny defendants any federal constitutional right.[9]

### C. *Was the Trial Court's Error Prejudicial?*

As already mentioned, the trial court's failure to instruct on the elements of a section 12022(b) enhancement was erroneous. ██ When "state standards alone have been violated, the State is free . . . to apply its own state harmless-error rule to such errors of state law." (*Cooper* v. *California* (1967) 386 U.S. 58, 62 [17 L.Ed.2d 730, 734, 87 S.Ct. 788].) "[T]he California Constitution, unlike its federal counterpart, contains an explicit provision that directly addresses the issue of reversible error—a section added by the electorate of this state for the specific purpose of *abrogating* the preexisting rule that had treated any substantial error as reversible per se." (*People* v. *Cahill* (1993) 5 Cal.4th 478, 501 [20 Cal.Rptr.2d 582, 853 P.2d 1037], italics in original, citing Cal. Const., art. VI, § 13.) This state constitutional provision "explicitly mentions 'misdirection of the jury' as error which warrants reversal only if, 'after examination of the entire cause, including the evidence, the court [concludes] . . . that the error . . . resulted in a miscarriage of justice.' The word 'misdirection' logically includes every kind of instructional error. It seems manifest that incorrect, ambiguous, conflicting, or wrongly omitted instructions may equally 'misdirect' the jury's deliberations. Nothing in the language or history of article VI, section 13, suggests

---

[9]To the extent *People* v. *White* (1987) 188 Cal.App.3d 1128, 1136 [233 Cal.Rptr. 772] is inconsistent with this conclusion it is hereby disapproved.

that its requirement of actual prejudice, determined by reference to 'the entire cause, including the evidence,' applies to some forms of 'misdirection,' but not to others." (*Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 579 [34 Cal.Rptr.2d 607, 882 P.2d 298].) Thus, the trial court's failure to instruct on the elements of a section 12022(b) sentence enhancement is "misdirection of the jury" for which we are constitutionally forbidden to reverse absent a "miscarriage of justice." (Cal. Const., art. VI, § 13.)

■ The test for harmlessness we articulated in *People* v. *Watson, supra,* 46 Cal.2d 818, which gives effect to the constitutional provision, is "generally applicable under current California law." (See *People* v. *Cahill, supra,* 5 Cal.4th at p. 492.) Under *Watson,* the trial court's judgment may be overturned only if "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.) "In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict." (*People* v. *Guiton* (1993) 4 Cal.4th 1116, 1130 [17 Cal.Rptr.2d 365, 847 P.2d 45].)

Applying the *Watson* test, we conclude neither defendant Wims nor defendant Ford was actually prejudiced by the trial court's instructional error.

■ First, we consider the record as to defendant Wims. Three witnesses, McCoy, Gebhardt and codefendant Gipson, testified Wims displayed a knife during the robbery. Gebhardt described in detail the menacing manner in which he displayed it. She saw Wims, after beating her fiancé with a crutch and then throwing it down, hold a knife "up in the air" "above his shoulders." Wims possessed a knife (People's exhibit 5C) at the time of his arrest. His counsel, in arguing to the jury, did not deny Wims had possessed a knife; indeed, he implicitly conceded the point: "Clearly he jumped into the assault. You know, Mr. Wims is no boyscout. What you see in evidence is definitely not a boyscout knife."

In contrast, the evidence Wims did not personally use a knife was weak. Gebhardt acknowledged on cross-examination she had told officers immediately after the attack she was not certain whether anyone other than Gipson had used a knife, but she described herself as "mostly concerned" at that time about the knife with which Gipson had been threatening her. Likewise, McCoy acknowledged on cross-examination he had not told officers about a second knife, but redirect examination revealed he had not been asked. D'Agostino testified he did not see anything in Wims's hands other than a

crutch, but he also testified he was not able to see Wims's hands after being struck in the face with the crutch. Wims, who argues the instructional error was prejudicial, contends the jury's requests for information during deliberations permit no other conclusion. As mentioned above, the jury asked for "a copy of or reading of Mr. D'Agostino and Mr. McCoy's testimony regarding the presence, display or lack of presence of a knife during the incident by Mr. Wims," and for an answer to the question whether "a crutch constitutes a deadly weapon." In view of these questions, Wims suggests, the most likely explanation for the jury's 'true' finding is that it was based on the accomplice instructions given and the evidence that Ford held a knife on D'Agostino during the robbery. We cannot agree questions from the jury focusing on *Wims*'s conduct logically support the inference the jury found the 12022(b) allegation true as to him based on *Ford's* conduct. In view of the evidence Wims did personally use a knife during the robbery, his speculations about the jury's deliberative processes do not justify the conclusion further instructions on section 12022(b) would, to a reasonable probability (*People* v. *Watson, supra,* 46 Cal.2d at p. 836), have brought about a more favorable verdict.

■ Our examination of the record likewise reveals no reasonable probability of prejudice as to defendant Ford's section 12022(b) enhancement. Four witnesses testified Ford brandished a knife. Both victims testified Ford held the knife in D'Agostino's face and threatened to "cut" him. Ford was found with a knife shortly after the robbery, which the victims said resembled the one he used in the robbery. Ford argued only that he never participated in the robbery at all, not that D'Agostino's alleged attacker lacked a knife. The evidence did not permit a conclusion that Ford displayed a knife without menacing intent. We conclude that even had the court informed the jury of the elements of a section 12022(b) enhancement, it is not reasonably probable they would have found that allegation to be not true as to defendant Ford.

### Conclusion

For the foregoing reasons, the judgment of the Court of Appeal is reversed insofar as it reversed imposition of the section 12022(b) sentence enhancements of defendants Wims and Ford. In other respects, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—In all respects save one, I concur in the judgment. The Court of Appeal was correct to uphold the second

degree robbery convictions of defendants Clifton C. Wims and Wilbert Ford under Penal Code sections 211 and 212.5 and also the sentence enhancement of defendant Ford for a prior serious felony conviction under Penal Code sections 667, subdivision (a), and 1192.7, subdivision (c).

As to the sentence enhancements of defendants Wims and Ford for personal use of a deadly or dangerous weapon in the commission or attempted commission of a felony under Penal Code section 12022, subdivision (b), I dissent. The Court of Appeal was correct to set aside the underlying findings, and to vacate the resulting one-year terms, because the omission of an instruction on the elements was prejudicial error under the United States Constitution. As a general matter, I fully join in Justice Kennard's analysis: it is irrefutable. But I cannot agree with her conclusion that the error was harmless as to defendant Ford on the ground that "overwhelming" evidence was introduced against him at trial. (See *People* v. *Harris* (1994) 9 Cal.4th 407, 440-442, 447 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (conc. & dis. opn. of Mosk, J.).)

For the foregoing reasons, I would affirm the judgment of the Court of Appeal in its entirety.

**KENNARD, J.,** Concurring and Dissenting.—In California, the Legislature has decreed that certain conduct, such as the use of a deadly weapon or the infliction of great bodily injury, during the commission of a felony increases the seriousness of that felony. A defendant found by a jury to have engaged in such conduct is subject to a sentence "enhancement" or increase in punishment, to be added to the term for the underlying offense.

Under the Sixth Amendment to the United States Constitution, a defendant in a criminal case is entitled to a jury trial. At that trial, the due process clauses of the Fifth and Fourteenth Amendments to the Constitution require the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. (*Sullivan* v. *Louisiana* (1993) 508 U.S. __ [124 L.Ed.2d 182, 187-188, 113 S.Ct. 2078, 2080]; *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) A trial court's failure to instruct the jury in a criminal case on the elements of the charged offenses denies the defendant these constitutional rights. (*Cabana* v. *Bullock* (1986) 474 U.S. 376, 384-385 [88 L.Ed.2d 704, 715-716, 106 S.Ct. 689].)

In this case, both defendants contend that the trial court violated their constitutional right to a jury trial, with proof beyond a reasonable doubt, because it failed to instruct the jury on the elements of the enhancement with

which they were charged. The majority rejects their contention, holding that an enhancement is merely a sentencing factor to which the federal constitutional right to jury trial does not apply. (Maj. opn., *ante*, p. 307.)

I disagree. Previous decisions of this court have held that enhancements are more than just sentencing factors. Enhancements, which in this state carry with them the statutory right to jury trial, bear a close similarity to criminal offenses both in the procedures created by the Legislature for their pleading and proof and in the consequences to the defendant that arise when a jury finds the existence of an enhancement. An enhancement is the functional equivalent of a criminal offense, adding new elements to an underlying crime to create a new, more serious offense. Because an enhancement is, in essence, part of the criminal offense to which it is attached, defendants charged with an enhancement must be accorded the same rights to which they are entitled on the underlying crime: to have a jury determine the elements of the charge, and to have the prosecution prove those elements beyond a reasonable doubt.

## I

Defendants Ford and Wims were charged with second degree robbery. (Pen. Code, former § 212.5, subd. (b), now subd. (c).)[1] The prosecution also alleged that each defendant had used a deadly weapon during the robbery, thus triggering the "enhancement" provision of section 12022, subdivision (b), which adds one year to the maximum possible prison sentence for the substantive offense. The prosecution's evidence at trial showed that defendants Wims and Ford, accompanied by codefendant Carolyn Gipson, accosted victims Paige D'Agostino and Elizabeth Gebhardt as they were walking along a San Francisco street. Defendant Ford grabbed D'Agostino around the neck from behind while defendant Wims (whose leg was in a cast) hit D'Agostino with a crutch and his fists. Both Ford and Wims tried to remove D'Agostino's leather jacket, while codefendant Gipson pushed Gebhardt, hit her in the head, and brandished a knife. When Ford held a knife inches from D'Agostino's face and threatened him, D'Agostino gave up the jacket.

Tom McCoy, a passing motorist who saw the robbery, called the police, who quickly located and arrested defendants. When arrested, both Ford and Wims had knives in their possession.

At trial, victims D'Agostino and Gebhardt and witness McCoy all testified that defendant Ford had threatened D'Agostino with a knife. McCoy stated

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

that defendant Wims too had a knife in his hands, but on cross-examination McCoy acknowledged that he had not told police this. Similarly, Gebhardt testified that she saw defendant Wims hold a knife above his head, but Gebhardt conceded on cross-examination that after the robbery she had told the police she was unsure whether Wims and Ford had displayed knives.

Neither defendant testified at trial. Codefendant Gipson, testifying in her own defense, admitted that she was present during the robbery, but denied participating in it. Gipson said that both Ford and Wims had knives during the robbery. On cross-examination, Gipson acknowledged telling the police that only defendant Ford had used a knife during the robbery.

Ford's counsel argued to the jury that the prosecution had not proved beyond a reasonable doubt that Ford was one of the persons who had robbed D'Agostino. Defense counsel for Wims admitted his client's participation in the assault on D'Agostino, but claimed that Wims had no intent to rob D'Agostino.

The trial court failed to instruct the jury on the elements of the charged enhancement pertaining to use of a deadly weapon. The verdict form, however, required the jury to decide whether it found the "Use of Deadly Weapon Allegation" to be "True [or] Not True"; it made no mention of the requirement that the jury could find the enhancement true only if it concluded that the defendant had "personally" used a deadly weapon.

During deliberations, the jury sent the trial court a note asking to hear "Mr. D'Agostino and Mr. McCoy's testimony regarding the presence/display or lack of presence/display of a knife during the incident by Mr. Wims." The court ordered the court reporter to provide the jury with the relevant testimony of witness McCoy, but the court erroneously told the jury that D'Agostino gave no testimony on the issue.[2] The note also asked, "does a crutch constitute a deadly weapon?" In response, the trial court told the jury that whether a crutch is a deadly weapon was not relevant to its decision, because the only deadly weapon that the pleadings charged defendant Wims with using was a knife.

The jury convicted both Ford and Wims of robbery, and found that each had used a deadly weapon within the enhancement provision of section

---

[2] In fact, D'Agostino testified that Wims had held a crutch, and that he had seen nothing else in Wims's hands. He also testified, however, that there were times during the robbery when he was unable to see Wims's hands.

12022, subdivision (b). Defendants appealed, contending, among other things, that the trial court had committed prejudicial error by failing to instruct the jury on the elements of the enhancement.[3] The Court of Appeal agreed, and as to each defendant reversed that portion of the judgment pertaining to the one-year enhancement for using a deadly weapon during the robbery.

## II

It is undisputed that the trial court violated state law by failing to instruct the jury on the elements of the enhancement for use of a deadly weapon. (*People* v. *Najera* (1972) 8 Cal.3d 504, 510 [105 Cal.Rptr. 345, 503 P.2d 1353].) At issue is whether the court's instructional error also violated the federal Constitution. If it did, the jury's enhancement finding as to each defendant can be affirmed only if it can be said that, beyond a reasonable doubt, the error did not contribute to the verdict. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) If, however, the error violated only state law, the enhancement finding is reversed only if the trial court's instructional error resulted in a "miscarriage of justice" (Cal. Const., art. VI, § 13), that is, "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The Sixth Amendment to the federal Constitution entitles a defendant in a criminal case to a jury trial. Under the due process clause, the prosecution "bears the burden of proving all elements of the offense charged . . . and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements . . . ." (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at p. __ [124 L.Ed.2d at p. 188, 113 S.Ct. at p. 2080], citations omitted.) When the trial court fails to instruct the jury on the elements of an offense, the jury does not know what findings it must make to decide whether the defendant has committed the offense, and thus is unable to make them. Therefore, a trial court's failure to instruct the jury on the elements of a criminal offense withdraws those elements from the jury's consideration, in violation of the defendant's right to due process under the Fourteenth Amendment and to trial by jury under the Sixth Amendment of the federal Constitution. (See *Cabana* v. *Bullock*, *supra*, 474 U.S. at pp. 384-385 [88 L.Ed.2d at pp. 715-716]; *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1313 [18 Cal.Rptr.2d 796, 850 P.2d 1].)

---

[3]The jury acquitted codefendant Gipson of robbery, but convicted her of misdemeanor battery on Elizabeth Gebhardt. Gipson did not appeal her conviction.

Are these rights also violated when, as here, the trial court fails to instruct the jury on the elements of an *enhancement*? To answer this question, I start my analysis with a review of the United States Supreme Court's decision in *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79 [91 L.Ed.2d 67, 106 S.Ct. 2411] (hereafter *McMillan*).

In *McMillan*, *supra*, 477 U.S. 79, 81-82 [91 L.Ed.2d 67, 73-74], each of four Pennsylvania defendants in unrelated cases was convicted of a criminal offense. In each case, the prosecutor asked the trial court to find that the defendant possessed a firearm during the commission of the offense, thereby bringing the defendant within the purview of Pennsylvania's "mandatory sentencing statute." Under that provision, a sentencing judge who, by a preponderance of the evidence, found that a defendant "visibly possessed a firearm" while committing specified crimes was required to impose a sentence of not less than five years for the underlying offense. In each case, the Pennsylvania trial court refused to make findings under the mandatory sentencing statute, ruling that application of the state statute would violate the federal Constitution because the statute did not entitle the defendants to have a jury determine the question of gun possession and to have the prosecution prove such possession beyond a reasonable doubt.

By a narrow (five to four) margin, the high court upheld the constitutionality of the Pennsylvania statute. To determine whether the federal Constitution's due process clause required the prosecution to prove the defendants' firearm possession "beyond a reasonable doubt," the court looked to the intent of the Pennsylvania legislature: did the legislature intend possession of a firearm to be an element of the crime with which the defendants were charged (in which case due process required proof beyond a reasonable doubt), or did it intend firearm possession to be merely a sentencing factor (in which case the federal Constitution did not require proof beyond a reasonable doubt except in limited circumstances)?[4] (*McMillan*, *supra*, 477 U.S. at pp. 85-86 [91 L.Ed.2d at pp. 75-76].)

The *McMillan* court pointed out that the Pennsylvania legislature had expressly chosen to make visible possession of a firearm during a crime not an element of the crime but a "sentencing factor" to be determined by the judge at the time of sentencing. Consequently, the court concluded, due process did not require the prosecution to establish the defendants' firearm

---

[4]In *McMillan*, *supra*, 477 U.S. at page 86 [91 L.Ed.2d at page 76], the high court held that state legislatures do not have "unbridled power to redefine crimes to the detriment of criminal defendants" and in some circumstances due process constraints will apply regardless of legislative intent. The court declined to define the extent to which due process circumscribes legislative power to reallocate or reduce the burden of proof in criminal cases.

possession beyond a reasonable doubt. The court noted that the defendants' claim that visible possession of a firearm under the Pennsylvania statute was really an element of the crime for which they were being prosecuted "would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment." (*McMillan, supra*, 477 U.S. at p. 88 [91 L.Ed.2d at pp. 77-78].) But that was not a consequence of the statute at issue, which simply raised the minimum sentence that the trial judge could impose. (*Ibid.*)

The high court then swiftly disposed of the defendants' contention that the Sixth Amendment to the federal Constitution entitled them to a jury trial on the question of firearm possession: "Having concluded that Pennsylvania may properly treat visible possession as a sentencing consideration and not an element of any offense, we need only note that there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." (*McMillan, supra*, 477 U.S. at p. 93 [91 L.Ed.2d at pp. 80-81].)

Therefore, under *McMillan, supra*, 477 U.S. 79, resolution of the issue here—whether a defendant charged with a "deadly weapon use" enhancement has a federal constitutional right to have a jury determine the elements of the enhancement, and whether the prosecution must prove the enhancement beyond a reasonable doubt—is largely dependent on the intent of the Legislature. If the Legislature intended enhancements to be roughly analogous to criminal offenses, then a defendant is entitled to a jury trial, as guaranteed by the Sixth Amendment, and the prosecution must prove the existence of the enhancement by proof beyond a reasonable doubt, consistent with the Fourteenth Amendment's due process requirements. If, on the other hand, the Legislature intended enhancements to be mere sentencing factors, neither right would generally be implicated.

## III

Determining the Legislature's intent with regard to enhancements is complex, because enhancements cannot be categorized neatly either as sentencing factors or as elements of an offense. They share characteristics of each. As the majority points out (maj. opn., *ante*, p. 304), an enhancement "is not a separate crime or offense" (*People* v. *Waite* (1983) 146 Cal.App.3d 585, 593 [194 Cal.Rptr. 245]), but " 'an additional term of imprisonment added to the base term' " (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 207 [249 Cal.Rptr. 850, 757 P.2d 1013]). Unlike most criminal offenses, an enhancement is not independent of other charges; rather, it is attached to some

underlying criminal offense, and a jury determines the truth or falsity of the enhancement only after it has found the defendant guilty of the underlying crime.

Nonetheless, enhancements have far more characteristics in common with criminal offenses than with sentencing factors. As shown below, enhancements closely resemble criminal offenses in the manner in which they are pleaded and proven and in their consequences to the defendant.

In California, the pretrial procedures that the Legislature has established to govern the manner in which enhancements are *charged* are identical to those pertaining to criminal offenses. For instance, an enhancement must be pleaded in the same manner as a substantive criminal offense. (§ 1170.1, subd. (f).) And at the preliminary hearing on the underlying offense, the prosecution must offer evidence of any enhancement it wishes to charge; if the prosecution fails to do so, the defendant may move to dismiss the enhancement for insufficiency of evidence. (§ 995; *People* v. *Superior Court (Mendella)* (1983) 33 Cal.3d 754 [191 Cal.Rptr. 1, 661 P.2d 1081], hereafter referred to as *Mendella*.)[5] I am unaware of any sentencing factor that is subject to similar requirements.

Also, the statutory procedures governing the *proof* of enhancements at trial are identical to those applicable to criminal offenses. Most significantly, unlike sentencing factors, whose existence is ordinarily determined by the trial judge, the Legislature has created a statutory right to have a jury determine the truth or falsity of an enhancement. (*People* v. *Wiley, supra*, 9 Cal.4th at p. 588; *People* v. *Najera, supra*, 8 Cal.3d 504, 509-510.) The jury performs that task not at the time of sentencing, but at the time it decides the defendant's guilt of the underlying crime charged. Additionally, the prosecution has the burden of proving an enhancement beyond a reasonable doubt (*People* v. *Santamaria* (1994) 8 Cal.4th 903, 918 [35 Cal.Rptr.2d 624, 884 P.2d 81]; *People* v. *Morton* (1953) 41 Cal.2d 536, 539 [261 P.2d 523]), a

---

[5]The requirement that the prosecution present evidence to support an enhancement at the preliminary hearing does not apply to enhancements for prior convictions. (*Mendella, supra*, 33 Cal.3d at p. 764, fn. 9; *People* v. *Shaw* (1986) 182 Cal.App.3d 682, 685-686 [227 Cal.Rptr. 378].) This case does not involve an enhancement for a prior conviction, and I express no views on whether the federal Constitution entitles a defendant to a jury trial on such a question. Recently, a majority of this court held, without extended discussion, that a defendant has no such right (*People* v. *Wiley* (1995) 9 Cal.4th 580, 585 [38 Cal.Rptr.2d 347, 889 P.2d 541]); Justice Werdegar's dissenting opinion, which I joined, did not address the issue.

standard traditionally associated with proving a defendant's guilt of an offense.[6]

Furthermore, enhancements are more like criminal offenses than sentencing factors in their *consequences* to the defendant. Unlike the Pennsylvania sentencing factor in *McMillan*, which operated solely to "limit the sentencing court's discretion in selecting a penalty within the range already available to it" by prohibiting the court from imposing a sentence below the statutorily prescribed minimum (*McMillan, supra,* 477 U.S. at p. 88 [91 L.Ed.2d at pp. 77-78]), our state's statutory enhancements *increase* a defendant's sentence beyond the maximum sentence prescribed for the underlying offense, thereby exposing the defendant "to greater or additional punishment . . . ." (*Ibid.*) In certain instances, a sentence for the enhancement can substantially exceed the sentence for the underlying offense. For example, second degree nonresidential robbery carries a maximum penalty of five years (§ 213), but if the jury after its determination of guilt finds as an enhancement that the defendant had used a firearm during the robbery, the trial court has statutory authority to sentence the defendant to an additional ten years in prison (§ 12022.5, subd. (a)), double the maximum term for the underlying offense.

Because, as discussed above, the pleading and proof requirements pertaining to enhancements are the same as those governing criminal offenses, and the consequences flowing from them are the same as from a criminal offense, the inference is strong that the Legislature must have intended enhancements to be the functional equivalent of criminal offenses. Consequently, the federal constitutional right to jury trial and proof beyond a reasonable doubt must also apply to enhancements.

IV

Decisions of this court lend further support to my conclusion that enhancements are the functional equivalent of criminal offenses.

In *Mendella, supra,* 33 Cal.3d 754, we explored the historical antecedents of enhancements. There, the issue was whether a defendant could challenge

---

[6]If the prosecution presents insufficient evidence to sustain an enhancement allegation at trial, double jeopardy principles bar retrial of the enhancement, just as they would bar retrial of a criminal offense. (*People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 78 [2 Cal.Rptr.2d 389, 820 P.2d 613], fn. 22; *People* v. *Pettaway* (1988) 206 Cal.App.3d 1312, 1331-1332 [254 Cal.Rptr. 436].) The United States Supreme Court has not decided whether double jeopardy principles are applicable to noncapital sentencing proceedings. (*Caspari* v. *Bohlen* (1994) 510 U.S. __, __-__ [127 L.Ed.2d 236, 244-251, 114 S.Ct. 948, 952-957].)

an enhancement allegation under section 995 on the ground it was not supported by the evidence at the preliminary hearing. This court concluded that enhancement allegations, like other criminal charges, must be supported by evidence at the preliminary hearing and that if the prosecution has not introduced sufficient evidence at the preliminary hearing, the defendant may move to dismiss the allegations.

We observed that several enhancements are based on facts that formerly "were contained in the statutory definitions of the particular offenses." (*Mendella, supra,* 33 Cal.3d at p. 762.) For example, being armed with a deadly weapon was formerly an element of the crime defined as robbery of the first degree (former § 211a; see Stats. 1961, ch. 1874, § 1, p. 3975) and of the crime defined as burglary of the first degree (former § 460; see Stats. 1955, ch. 941, § 1, p. 1827).

With the enactment of the determinate sentencing law (DSL) in 1976, these acts, scattered through the Penal Code, were brought together and labeled as "enhancements." But as we explained in *Mendella,* the Legislature did not intend its relabeling to deprive criminal defendants of any procedural rights: "[B]efore the enactment of the DSL, allegations that could increase punishment, such as personal use of a firearm, great bodily injury, or being armed with a deadly weapon, were spread throughout the Penal Code; some were contained in the definitions of particular crimes (see, e.g., former §§ 209, 213, 460, 461), while others merited separate sections (see, e.g., former §§ 3024, 12022, 12022.5). With the advent of the DSL, the provisions for such allegations were deleted from the definitions of the substantive offenses, were placed in distinct sections, and are now known as 'enhancements.' (See, e.g., §§ 12022, 12022.5, 12022.6, 12022.7; Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 23, 31.) [¶] The DSL was designed to revise the Penal Code with regard to sentencing. *Nothing in its history or form intimates that the Legislature intended by reorganizing the Penal Code to deprive the defendant of any procedural rights that he possessed prior to the new law.*" (*Mendella, supra,* 33 Cal.3d at p. 763, italics added to last sentence.) Implicitly, the majority does just that here.

The majority's holding is also at odds with this court's decision in *People v. Hernandez, supra,* 46 Cal.3d 194 (hereafter *Hernandez*). In *Hernandez,* the jury had convicted the defendant of rape; at the time of sentencing, the trial court increased the defendant's sentence by applying section 667.8 (three-year enhancement for a rape occurring in the course of a kidnap), an enhancement that was not charged in the accusatory pleading. At the time,

the Legislature had not explicitly imposed a requirement that a section 667.8 enhancement be pleaded and proved, as it had done with other enhancements.[7]

In *Hernandez*, this court held that "a pleading and proof requirement [for section 667.8] should be implied as a matter of statutory interpretation and *must be implied as a matter of due process.*" (*Hernandez, supra*, 46 Cal.3d at p. 197, italics added.) Rejecting the Attorney General's argument that section 667.8 was "a sentencing consideration for the judge" (*id.* at p. 204) similar to the sentencing factors in *McMillan, supra*, 477 U.S. 79, this court said: "Nothing in [*McMillan*] suggests that in our sentencing scheme section 667.8 should be read as a mere sentencing factor rather than a finding which must be pled and proven before the trier of fact." (*Hernandez, supra*, 46 Cal.3d at p. 206, fn. omitted.)

In this case, the majority revives the Attorney General's argument that this court unanimously rejected in *Hernandez, supra*, 46 Cal.3d 194. Overlooking this court's holding in *Hernandez* that enhancements are not "sentencing factors," and that they are therefore subject to the federal due process requirements of pleading and proof, the majority concludes that enhancements are indeed sentencing factors, and therefore not subject to federal due process protections. At the same time, however, the majority cites *Hernandez* with approval, apparently blissfully unaware that its reasoning cannot be reconciled with our decision in that case.

Trying to find support for its conclusion that enhancements are sentencing factors, the majority cites a decision by the Ninth Circuit Court of Appeal, *Nichols* v. *McCormick* (9th Cir. 1991) 929 F.2d 507. There, the court considered the constitutionality of a Montana law providing that a defendant who "displayed, brandished, or otherwise used a firearm" in the commission of an offense was to receive an increase in punishment of between two and ten years. The federal court upheld the constitutionality of the statute, concluding that under Montana law use of a firearm was a sentencing factor, not an element of an offense.

But a closer look at the Montana statute at issue in *Nichols* v. *McCormick, supra*, 929 F.2d 507, soon reveals that it bears no resemblance to the California statutory scheme governing enhancements. As I explained earlier, our Legislature has elected to treat enhancements as extensions of the

---

[7]The Legislature's failure to require pleading and proof of the enhancement was an apparent oversight, which the Legislature subsequently corrected. (*Hernandez, supra*, 46 Cal.3d at p. 206, fn. 12.)

substantive offenses to which they attach, to be pleaded and proven *before a jury* in the same manner as any substantive crime. In contrast, the Montana statute in *Nichols,* like the Pennsylvania statute in *McMillan, supra,* 477 U.S. 79, made the question of whether the defendant had used a firearm in the commission of the offense a matter to be decided by *the trial judge at sentencing* on the underlying offense. (See *State* v. *Madera* (1983) 206 Mont. 140, 152 [670 P.2d 552, 558] [under Montana statute, trial court decides truth of enhancement at sentencing hearing].) Thus, *Nichols* correctly held that the Montana legislature had elected to treat firearm use as a sentencing factor, not as a substantive offense.

To summarize, because under California law enhancements are not simply sentencing factors, but are the functional equivalent of substantive offenses, the federal Constitution entitles a defendant charged with an enhancement to have a jury determine the existence of the elements of the enhancement, and to have the prosecution prove the elements beyond a reasonable doubt. Here, the trial court's failure to instruct the jury on the elements of the enhancement alleged against defendants effectively denied them these rights.

V

The remaining question is whether the trial court's error was prejudicial, that is, whether it can be said beyond a reasonable doubt that the court's failure to instruct on the elements of the enhancement had no effect on the jury's verdict. (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at p. 710].) I conclude the error was prejudicial as to defendant Wims, but not as to defendant Ford.

As I mentioned earlier, section 12022, subdivision (b)'s one-year enhancement for use of a weapon has three elements: (1) a deadly or dangerous weapon, that is, "any weapon, instrument or object that is capable of being used to inflict great bodily injury or death" (CALJIC No. 17.16); (2) the weapon's use in the commission of the offense, that is, the defendant's display of the weapon in a menacing manner or intentional use of the weapon to strike a human being during the offense (*People* v. *James* (1989) 208 Cal.App.3d 1155, 1163 [256 Cal.Rptr. 661]); and (3) "personal" use, that is, the defendant, rather than an accomplice, must have wielded the weapon. (*People* v. *Cole* (1982) 31 Cal.3d 568, 576 [183 Cal.Rptr. 350, 645 P.2d 1182].) Although the trial court in this case failed to instruct the jury on the elements of the enhancement, the verdict form submitted to the jury required it to make findings on the first two of these elements: that there was

a deadly weapon, and that the weapon was "used."[8] Accordingly, the jury was informed that in order to find the enhancement allegation true, it must find each of these two elements to be present. Although the trial court erred in not defining the terms "deadly weapon" and "use," it is inconceivable that the failure to define these terms affected the jury's verdict: defendants' knives were incontestably deadly weapons and, assuming that the jury believed the testimony of the witnesses who observed the knives, there could be no doubt that the knives were used in the commission of the offense.

The third element of the enhancement, that is, the requirement that the use be "personal," did not appear on the verdict form submitted to the jury. Thus, because the trial court did not inform the jury of this element of the enhancement, the jury did not determine the truth or falsity of this element when it found the enhancement allegation true as to both defendants.

With respect to defendant Ford, the trial court's failure to instruct the jury on the third element of the enhancement was harmless beyond a reasonable doubt. Every witness at the trial testified that Ford had used a knife during the robbery, and all but battery victim Gebhardt so told the police shortly after the robbery.[9] Because the undisputed evidence overwhelmingly showed that Ford had used a knife during the robbery, the trial court's instructional error as to him is harmless beyond a reasonable doubt. (*Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at p. 710]; *People* v. *Harris* (1994) 9 Cal.4th 407, 431 [37 Cal.Rptr.2d 200, 886 P.2d 1193].)[10] That, however, cannot be said of the error pertaining to defendant Wims.

Robbery victim D'Agostino never saw a knife in Wims's hands. Although witnesses McCoy, Gebhardt, and Gipson all testified that Wims had a knife,

[8]As to each defendant, the first sentence of the verdict form asked the jury to state whether it found the defendant guilty or not guilty of robbery. The second sentence read: "We further find the Use of Deadly Weapon Allegation (Violation of Penal Code Section 12022(b) to be _____." Beneath the line at the end of the sentence were typed the words "True [or] Not True."

[9]Battery victim Gebhardt originally told the police that she was unsure whether defendant Ford had a knife.

[10]In performing this "harmless error" evaluation, I have attempted to apply the reasoning that a majority of this court used in *People* v. *Harris, supra,* 9 Cal.4th 407, when it relied on the overwhelming strength of the evidence against the defendant to conclude that instructional error of federal constitutional dimension was harmless beyond a reasonable doubt. Although stare decisis principles compel me to apply the majority's analysis, I still adhere to the view that the majority's reasoning in *Harris* is wrong and difficult to follow. (See *id.* at p. 452 (conc. & dis. opn. of Kennard, J.).) Because, as I explained in *Harris,* the United States Supreme Court has not clearly described how a reviewing court should conduct a harmless error evaluation when the trial court has inaccurately defined, or failed to define, the elements of a criminal offense to the jury (*id.* at pp. 460-463), I urge the high court to provide further elucidation.

none of them had told the police after the robbery that Wims had a knife: McCoy did not mention a knife, Gebhardt stated she was "unsure" whether Wims had a knife, and Gipson said that Wims did not have a knife. Furthermore, the witnesses saw Wims wielding a crutch, rendering his simultaneous use of a knife improbable.

The jurors were clearly troubled about the question whether Wims had used a knife during the robbery, for they sent the trial judge a note asking for a readback of testimony relating to this point and inquiring whether the crutch was a deadly weapon. It may well be that the jury, not informed by the trial court that personal use of the weapon was required, but instructed on the principles of accomplice liability, ultimately found the weapon use enhancement charged against defendant Wims to be true because he was an accomplice of defendant Ford, who unquestionably had used a knife during the robbery. Thus, I cannot say beyond a reasonable doubt that the trial court's failure to instruct on the elements of the enhancement was harmless as to defendant Wims. As to him, therefore, I would reverse the finding of deadly weapon use.