[Crim. No. 8203.   Second Dist., Div. Three.   Feb. 21, 1963.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  ISHMAEL
GONZALES  OZUNA,  Defendant  and  Appellant.

Chandler & Duncan and Elinor Chandler for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert H. O'Brien, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Appellant Ishmael Gonzales Ozuna was accused of the murder of Adelina Mable Maldonado, with a prior conviction of burglary. He admitted the prior conviction. In the first trial the court declared a mistrial after the jury was unable to agree upon a verdict. In the second trial, before a jury, defendant was found guilty of voluntary manslaughter, a lesser, but necessarily included offense to that charged. He appeals from the judgment.

There were no eyewitnesses to the incident other than the defendant, who did not testify. The People offered into evidence the testimony of Officer James J. Pena. He testified that at approximately 2:30 p.m., on the day of the homicide, he had questioned the defendant, who related the following facts: at approximately midnight, of the night before, he left his brother's gas station, where he was employed, and met his girl friend "Lena," the decedent. They drove to a bar where they had several drinks. When they left the bar they went for a drive and returned to Lena's home at about 4 o'clock in the morning, where they parked in front of her apartment. The officer testified: "He said that when they left the bar she took his gun out of her purse and laid it on the seat. We asked him why she had the gun. He said, 'I carry this gun for protection, and when we are out, I let her carry it because I do not want to be caught with the gun because I am an ex-convict.'" Thereupon, outside the hearing of the jury, defendant's attorney cited the use of the testimony that defendant stated he did not want to be caught with the gun because he was an ex-convict as misconduct of the district attorney and moved for a mistrial. The prosecutor said: "It is part of the conversation, your Honor, to explain his conduct." The court replied: "First, Mr. Fukuto, the mere

fact that something is part of a conversation does not render the entire conversation admissible. Mr. Fukuto: I understand that. The Court: That is one of the first elementary rules. It has to be otherwise relevant and material.'' Mr. Fukuto argued that the evidence was admissible and not prejudicial. The court asked Mr. Fukuto: ''So, in other words, you had information about the fact that the officer was going to so testify.'' Mr. Fukuto replied ''Certainly.'' The court stated ''And with that information, I frankly feel that the officer should have been admonished not to include that in the conversation.''

It was then developed that at the preliminary hearing the officer testified that defendant had made the same statement but that at the former trial he had not testified to defendant's statement that he was an ex-convict. The court finally ruled that the testimony of the officer, insofar as it related to the statement of the defendant that he did not want to be caught with the gun because he was an ex-convict, was material to the issues and proper for consideration of the jury. Nevertheless the court ruled further that out of an abundance of caution and to make certain that defendant would be given a fair trial the testimony would be stricken. It was stricken, the jury was advised of that fact and was admonished to forget and entirely disregard defendant's statement that he was an ex-convict.

Thereafter the officer testified defendant said that Lena had placed the gun on the seat of the car between them. A pillow was placed over it. Defendant and the decedent engaged in an argument. The decedent tore off her blouse, which defendant had previously given to her, and said: ''Here. Take your blouse back.'' Defendant became angry and reached under the pillow for the gun in order to scare her. The gun went off, fatally injuring the decedent. Defendant took her to a hospital where she expired.

We shall consider first the question whether the evidence of defendant's statement that he was an ex-convict was admissible as tending to prove a material fact in the case. This is the only question that was argued at length and ruled upon at the trial and the only one that is discussed in the briefs.

The People contend that the testimony of the statement of defendant that he was an ex-convict was admissible under the rule that evidence which tends substantially to prove a material fact should be received, even though it discloses that the

accused was or may have been guilty of other offenses or wrongful acts. But this is strictly an exception to the general rule that proof of the commission of other and unrelated crimes is inadmissible. The rule applicable here is that where evidence of the commission of another crime tends only remotely or to an insignificant degree (and, of course, where it does not tend at all) to prove a material fact in the case, proof of the same is inadmissible. (*People* v. *Albertson,* 23 Cal.2d 550 [145 P.2d 7].) The fact that defendant had previously been convicted of some crime had no bearing whatever upon the question whether the gun was fired accidentally or intentionally. The gun was on the car seat and defendant knew it was there. It was for defendant to explain, not for the People to prove how and why it was placed there.

The testimony of the officer as to defendant's statement that he was an ex-convict was not unexpected; it was calculated. The officer had given the same testimony at the preliminary, but in the first trial he had omitted defendant's statement that he was an ex-convict. The same deputy acted as prosecutor in both trials. Since the fact of defendant's prior conviction was patently irrelevant to the issues, we can only conclude that the evidence was produced to prove defendant's debased character and criminal disposition. It was the duty of the district attorney to prevent the giving of the testimony as to defendant's statement (*People* v. *Bentley,* 131 Cal.App.2d 687 [281 P.2d 1]) rather than to plan its use.

We have shown there is no merit in the contention of the People that the questioned statement of defendant was material to the issue. Therefore, it was error to permit the admission of the former conviction to become known to the jury.

Where a former conviction which is not an element of the crime for which defendant is on trial is admitted outside the presence of the jury, allusion to it during the trial is forbidden by section 1025, Penal Code, and under the mandate of section 1093 of the Penal Code the clerk in reading the information to the jury must omit any reference to the prior conviction. Violation of either of these sections has invariably been held error and has frequently resulted in reversals. (*People* v. *Thomas,* 110 Cal. 41 [42 P. 456]; *People* v. *Meyer,* 73 Cal. 548 [15 P. 95]; *People* v. *Hudgins,* 59 Cal. App.2d 175 [138 P.2d 311]; *People* v. *Hobbs,* 37 Cal.App. 2d 8 [98 P.2d 775]; *People* v. *Daniel,* 169 Cal.App.2d 10

[336 P.2d 556] ; *People* v. *Sansome,* 84 Cal. 449 [24 P. 143] ; 48 Cal. Jur. 2d, Trial, § 423.)

 The crucial question is whether the admonition to the jury removed the harmful effect of the questioned evidence. We are convinced that it did not. It is self-deceptive to assume that the jurors could put out of their minds defendant's statement. "Ex-convict" is a hateful word and the jurors would have read it in defendant's features as he sat before them as clearly as if it had been written there. The human mind is not so constructed as to permit a registered fact to be unregistered at will. Whether the fact of defendant's prior conviction probably had an influence upon the verdict is another matter.

There can be no doubt as to the sufficiency of the evidence to justify the verdict of voluntary manslaughter, but it cannot be said the evidence of guilt was so strong as to preclude a finding of innocence. It is significant that upon the former trial there was no evidence of defendant's statement that he was an ex-convict, and the jury disagreed.

The objectionable testimony was produced in order to strengthen the People's case by generating prejudice in the minds of the jurors. It is our opinion that its use for that purpose was not only serious misconduct but was fraught with such harm to defendant as to be irremediable. We would not be warranted in affirming the judgment unless we felt assured the court's admonition removed the obvious prejudice to the defense. In view of the entire record we cannot say that the admonition probably accomplished that purpose.

The purported appeals from miscellaneous orders and rulings are dismissed. The judgment is reversed.

Ford, J., and Files, J., concurred.