91 Cal.Rptr.2d 396 (1999)
77 Cal.App.4th 38
The PEOPLE, Plaintiff and Respondent,
v.
Joel Robert TOBIAS, Defendant and Appellant.
No. H018424.
Court of Appeal, Sixth District.
December 23, 1999.
Review Granted March 29, 2000.
*400 Chris R. Redburn by Appointment under the Sixth District Appellate Program, San Francisco, for Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Rene A. Chacon, Supervising Deputy Attorney General, Jeremy Friedlander, Deputy Attorney General, for Respondent.
MIHARA, J.
Defendant was convicted by jury trial of ten counts of incest (Pen.Code, § 285) with his daughter. He pleaded guilty to one misdemeanor count of failing to register as a sex offender (Pen.Code, § 290, subd. (g)). The court found true an allegation that defendant had suffered a prior conviction within the meaning of Penal Code sections 667, subdivisions (b) to (i) and 1170.12. Defendant was committed to state prison for 18 years. On appeal, he asserts that (1) his trial counsel was prejudicially deficient in (a) failing to seek redaction of three words spoken by defendant on an incriminating tape-recording of a conversation between defendant and his daughter and (b) failing to bring a motion to suppress defendant's tape-recorded confession to the police as involuntary, (2) the trial court prejudicially erred in failing to instruct the jury that defendant's daughter was an accomplice whose testimony should be viewed with caution and required corroboration, (3) the trial court reversibly erred in instructing the jury on the consanguinity element of incest when it told the jury that a father-daughter relationship satisfied the consanguinity requirement, (4) there was insufficient evidence that defendant's prior conviction was for a serious or violent felony because lewd acts "on" a child are not the same as lewd acts "with or upon" a child and (5) the trial court prejudicially erred in denying defendant a jury trial on the issue of whether he had suffered the prior conviction. We conclude that the trial court should have given accomplice instructions, but the error in failing to do so was harmless. We reject the remainder of defendant's contentions and affirm the judgment.

FACTS
In July 1995, defendant's daughter Vanessa was 16 years old. Vanessa already had one child, a daughter who was three months old. Defendant had not been married to Vanessa's mother, and Vanessa had had no contact with defendant prior to 1995. Vanessa went to live with defendant in late July 1995 after having an argument with her mother. A number of weeks [1] after her arrival at defendant's home, defendant asked Vanessa to orally copulate him. Vanessa complied with his request. The next day, defendant again had some kind of sexual contact with Vanessa. The day after that, defendant had sexual intercourse with Vanessa. Defendant told Vanessa not to tell his wife. He threatened to "disown" Vanessa if she told anyone. Defendant continued to have sexual intercourse with Vanessa several times a week for "months." Vanessa moved out in February 1996. On June 13, 1996, Vanessa gave birth to Alexis. Alexis was neither premature nor overdue. A DNA test proved that defendant is the biological father of Alexis.
Vanessa did not tell anyone about defendant's sexual relationship with her until 1997. In June 1997, she told her half-sister Lisa that defendant had "forced" her to have a sexual relationship with him. Vanessa told Lisa that Vanessa and defendant had sex "[e]very day or every other *401 day" while Vanessa lived with defendant. Lisa urged Vanessa to report defendant's conduct to the police. The police were contacted by telephone on June 12, 1997. Vanessa was interviewed by San Jose police officer Paul Francois on June 18. She told Francois about the sexual relationship between her and defendant. At Francois's direction, Vanessa made a tape-recorded "pretext" telephone call to defendant.
During this conversation with Vanessa, defendant made numerous admissions. Vanessa asked defendant if he had told her the truth when he claimed to have gotten a vasectomy. Defendant said it was true and asked "why?" Vanessa said "[c]ause I think Alexis is yours." Defendant insisted that this "[c]ouldn't be." When Vanessa said "she can be yours," defendant replied "Nope. Cause I had, I did that a long time ago." Vanessa inquired "[w]hen?" Defendant gave this reply: "It was after Gilbert I did it. That was in '88. Cause I got it done over there in uh, I got it done in the, in the uh, in the joint. It was after I got, after she was gonna divorce me I said `fuck this shit, I'm gonna go get it done' and I got it done there for nothing." He continued to insist that Alexis "couldn't be mine." Vanessa exclaimed "You're only fucking me and then you fucking, then I got pregnant." Defendant's reply was "Mmm. Don't be talking like that."
They also had this tape-recorded interchange during this telephone conversation. "VANESSA ...: Mmm. So why did you do what you did? [¶] JOEL TOBIAS: What do you mean? [¶] VANESSA ...: Had sex. [¶] JOEL TOBIAS: It was you. [¶] VANESSA ...: Me? [¶] JOEL TOBAS: Uh huh. [¶] VANESSA ...: What do you mean, me? [¶] JOEL TOBIAS: Well, we'll talk about it later. Got too many people around here, [whispers] Cause you keep ... Kept looking at my balls. [¶] VANESSA ...: Oh, whatever. Don't even go there. [¶] JOEL TOBIAS: [laughs] Do you like, you didn't like `em, huh? [¶] VANESSA ...: Nope. [¶] JOEL TOBIAS: Yeah, right. Uh huh. Sure." When Vanessa told defendant that she intended to report "it," defendant told her "I guess you won't see me forever, then" and "[t]hey'll throw me in, they'll throw me in the can forever." Defendant asked her why she was "doing this" and Vanessa said "Because I'm mad." Defendant said "It sure didn't seem to stop you when you were doing it." Vanessa asked him "how come it went on for so long?" Defendant said "I have no idea." She said "I mean, shit, once I can understand but, fucking, for like I don't know how many months." Defendant's reply was "Mmm. I don't know. Every time you got an urge you came to me."
On June 24, Francois interviewed defendant. This entire interview was tape-recorded. Defendant did not appear to be under the influence of drugs or alcohol during the 9:30 a.m. interview. Defendant was advised of his constitutional rights, waived them and agreed to talk to Francois. Defendant told Francois that Vanessa had lived with him for about a year. He asserted that "Emir" was Alexis's father. At first, defendant denied having any kind of sexual relationship with Vanessa. Francois asked defendant if he would be willing to submit to a DNA test to determine whether he was the father of Alexis. Defendant agreed to do so.
Francois informed defendant "I already know what happened." "There is a situation between you and your daughter. Now here are your choices at this point. You can either try and explain it to me, to make it make sense, because I already know what happened. I already know that you were having sex with Vanessa. Your options here today, if you wanna do something for yourself, to try and rectify a situation that's already bad, is to explain to me so that I can tell the DA why this was going on. Were you outta your right mind at the time, or where [sic] you thinking she was somebody else, or what. You know, there's an explanation, you know. What, what is it Joel? It's not that it didn't happen because it happened." Defendant *402 continued to deny that he had had a sexual relationship with Vanessa. He also denied that Vanessa had confronted him with these allegations.
In response to defendant's repeated denials, Francois revealed that he had tape-recorded Vanessa's telephone conversation with defendant during which defendant had admitted having sex with Vanessa. Defendant immediately admitted having sex with Vanessa. He insisted that Vanessa had initiated the sexual relationship by repeatedly looking at him "in the wrong way" and then demanding sex. "[S]he's the one that came on to me first." Defendant said that he complied because he was drunk. He described in some detail the events leading up to the first time he engaged in sexual intercourse with Vanessa. Defendant also admitted that he had continued to have sex with Vanessa allegedly because she continued to demand sex and threaten that "she was gonna say something" if he did not comply with her demands. He admitted engaging in oral copulation and digital penetration with Vanessa. He maintained that he was "drunk" on every occasion. When Francois asked defendant "[h]ow do you know you're sterile," defendant claimed that he assumed he was sterile because he had used a lot of drugs, his former wife had had difficulty becoming pregnant and he had not impregnated a girl with whom he had had a two-week relationship.
Francois inquired about the length of defendant's sexual relationship with Vanessa. Defendant told Francois that he had had sex with Vanessa "four or five times" over a period of four to six months. However, he also said "[b]ut every time she wanted it she'd come and tell me." Defendant admitted that there was a "[g]ood possibility" that he had had sex with Vanessa more than four or five times and "[p]robably once a week." At the end of the interview, Francois asked defendant "[w]hat, if anything, did I say that caused you to tell me what had happened between you and Vanessa?" Defendant replied "[j]ust being honest."
Defendant was charged by information with 31 counts of incest (Pen.Code, § 285) and one misdemeanor count of failing to register as a sex offender (Pen.Code, § 290, subd. (g)), and it was also alleged that he had suffered a prior conviction within the meaning of Penal Code sections 667, subdivisions (b) to (i) and 1170.12. Each of the incest counts charged defendant with committing incest with his daughter Vanessa during successive one-week periods between July 1, 1995 and February 2, 1996. The prior conviction allegation was bifurcated at defendant's request. Defendant pleaded guilty to the failure to register count at the commencement of trial.
At the early 1998 trial, Vanessa could not remember much about the time she spent living at defendant's home. She testified that there had been "50 or 60" incidents of sexual intercourse between her and defendant, but that the only incidents she could recall in detail did not involve sexual intercourse but instead "different types of sexual conduct." She testified that her memory of the incidents of sexual intercourse was best when she talked to Francois in June 1997. The prosecution adduced evidence that defendant had been identified by DNA testing as the father of both Vanessa and her daughter Alexis.
Defendant testified at trial that he had engaged in a single incident of sexual intercourse with Vanessa at the beginning of October 1995 during a brief sexual relationship with her that lasted a week or two.[2] He maintained that there had been no other incidents of sexual intercourse between them. He testified that Vanessa *403 had not moved into his home until August or late September 1995 and had left in mid-November 1995. He also stated that he had stopped staying overnight at his home regularly in mid-November 1995 when he began an affair with Dolores Rosales. Defendant asserted that his relationship with Vanessa did not continue after he began seeing Rosales. He maintained that he had moved out of his home in early January 1996 and begun living with Rosales. Rosales testified that she met defendant in November 1995 and began a sexual relationship with him in late November or early December. By January, defendant was regularly staying overnight at her home.
Defendant admitted that he had told Francois that he had sexual intercourse with Vanessa multiple times over a period of five to six months. His explanation for the discrepancy between his trial testimony and his statement to Francois was that he had been "under the influence of drugs" and "probably mumbling out of my mouth" when he spoke to Francois
After both sides had rested, the prosecution dismissed the three counts concerning the period from July 1 to July 21. In his closing argument, defendant's trial counsel asserted that "a reasonable interpretation" of the evidence would permit a finding that the sexual relationship between defendant and Vanessa "happened hot and furious for probably on a daily basis for a good six weeks ... [a]nd then it stopped" when defendant became involved with Rosales in November.
The jury deadlocked on the seven counts concerning the period from July 22 to September 8 and the ten counts concerning the period from November 18 to January 26. The jury returned guilty verdicts on the ten counts concerning the period from September 9 through November 17. It returned a not guilty verdict on the final count for the period from January 27 to February 2.
Defendant stipulated to "identity," and the court found the prior conviction allegation true. Defendant "stipulate[d] to" an 18-year prison term in exchange for the prosecution's dismissal of the counts on which the jury had deadlocked. The 18year prison term was imposed, and defendant filed a timely notice of appeal.

DISCUSSION

A. TRIAL COUNSEL'S PERFORMANCE
Defendant maintains that his trial counsel was prejudicially deficient because trial counsel (1) failed to seek redaction of defendant's words "in the joint" on the tape-recording of defendant's conversation with Vanessa and (2) did not bring a motion to suppress as involuntary defendant's tape-recorded confession to Francois.
When a defendant challenges his conviction based on a claim of ineffective assistance of counsel, he must prove by a preponderance of the evidence that counsel's performance was deficient and that his defense was prejudiced by those deficiencies. (People v. Ledesma (1987) 43 Cal.3d 171, 218, 233 Cal.Rptr. 404, 729 P.2d 839; Strickland v. Washington (1984) 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.) "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (Strickland v. Washington, supra, 466 U.S. at p. 687, 104 S.Ct. 2052.)
"The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." (Strickland at p. 694, 104 S.Ct. 2052.) "The defendant must show that *404 there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [¶] In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." (Strickland at p. 694, 104 S.Ct. 2052.)

1. "IN THE JOINT" STATEMENT
The trial court ruled in limine that the prosecution could use two of defendant's prior felony convictions to impeach him if he testified at trial. Although defendant did testify at trial, the prosecution never utilized this impeachment evidence. The tape-recorded telephone conversation between Vanessa and defendant was played for the jury and admitted into evidence at trial during the prosecution's case-in-chief. During this conversation, Vanessa suggested to defendant that he might be the father of her child. Defendant insisted that he could not be Alexis's father because he had had a vasectomy. In response to Vanessa's inquiry about when he had had the alleged vasectomy, defendant concocted the following story. "It was after Gilbert [one of defendant's other children] I did it. That was in '88. Cause I got it done over there in uh, I got it done in the, in the uh, in the joint. It was after I got, after she was gonna divorce me I said 'fuck this shit, I'm gonna go get it done' and I got it done there for nothing." When defendant was interviewed by Francois six days later, he no longer was asserting that he had had a vasectomy. Instead, he claimed that he believed he was sterile because he had used a lot of drugs and had not easily impregnated two women. The DNA evidence established beyond any rational doubt that defendant was not sterile. The jury was instructed that it could infer a consciousness of guilt from defendant's false or misleading statements about the charged offenses. At the commencement of trial and again during its instructions to the jury just prior to deliberations, the court instructed the jury not to base its verdict on or be influenced by "prejudice against a defendant."
We do not believe that defendant's trial counsel was prejudicially deficient in failing to obtain redaction of the words "in the joint." First, since the trial court had already ruled that defendant's two prior felony convictions could be admitted to impeach him if he testified, defendant's trial counsel could have reasonably concluded that the "in the joint" statement was trivial in light of the expected admission of the prior convictions. Indeed, the prosecution's subsequent failure to impeach defendant with his prior convictions seems to reflect a tactical decision by the prosecutor that admission of defendant's prior convictions might lead the jury to improperly speculate that this case was a "three strikes" case and exercise leniency. Second, while the statement itself was potentially prejudicial, it was also probative of the consciousness of guilt that defendant's elaborate false vasectomy tale bespoke. Defendant's detailed explanation of how he had gotten a vasectomy "in the joint" because it was free demonstrated the lengths to which he would go to conceal evidence of his guilt. A trial court might conceivably have concluded that, since evidence of defendant's prior convictions had already been ruled admissible, this evidence would not amount to character evidence since most jurors would logically conclude that prior felony convictions necessarily led to some time "in the joint." (Evid.Code, § 1101.) The court could also have concluded that this evidence was probative on the consciousness of guilt issue and did not pose a substantial danger of undue prejudice. (Evid.Code, § 352.)
Finally, even if defendant's trial counsel was deficient in failing to seek redaction of these three words and even if the trial court would probably have ordered *405 redaction of these three words, there is no reasonable probability that the inclusion of these three words had any impact on this trial. The only real issue at trial was the length of the sexual relationship. Defendant conceded that there had been a sexual relationship, but he testified that there had only been one incident of sexual intercourse during a two-week sexual relationship. His confession to Francois completely contradicted his trial testimony. He had told Francois that the relationship lasted five or six months and included at least five or six incidents of sexual intercourse and that he had probably had sexual intercourse with Vanessa on a weekly basis throughout the sexual relationship. His taped conversation with Vanessa also contained admissions that there had been numerous incidents of sexual intercourse over a lengthy period of time. The admission of defendant's taped statement that he had been "in the joint" when he got a vasectomy had no impact on any of this evidence or on the jury's verdicts.
Defendant relies solely on People v. Ozuna (1963) 213 Cal.App.2d 338, 28 Cal. Rptr. 663. Ozuna is distinguishable. In that case, at a trial at which the only issue was whether the defendant's firing of the gun was accidental or intentional, the prosecution adduced a police officer's testimony that the defendant had stated that he gave his gun to a friend because he was an "ex-convict." The appellate court held that the defendant's "ex-convict" statement was irrelevant to any material issue at trial and therefore its admission was error. (Ozuna at pp. 339-341, 28 Cal. Rptr. 663.) The court also concluded that the officer's testimony about the remark was prejudicial (even though the trial court struck the testimony and admonished the jury to disregard it) because the jury's knowledge that the defendant was an "ex-convict" was so inflammatory.
Here, evidence of defendant's prior convictions had already been ruled admissible to impeach defendant's credibility. Hence, at the time the tape was played for the jury, it appeared that the jury was necessarily going to learn that defendant was an "ex-convict." His admission that he had also been "in the joint" was a fairly trivial additional piece of information in light of the expected admission of his prior convictions. Furthermore, in contrast to Ozuna, defendant's "in the joint" statement was an integral part of his false statement about the charged offenses which tended to further demonstrate his consciousness of guilt. Ozuna's counsel objected to the admission of the officer's testimony, but defendant's trial counsel could have reasonably concluded that there was little to gain from exclusion of these three words. We do not find Ozuna to be persuasive on the issue before us. Defendant's trial counsel was not prejudicially deficient in failing to seek redaction of the words "in the joint."

2. DEFENDANT'S CONFESSION TO FRANCOIS
Defendant claims that his trial counsel was prejudicially deficient in failing to seek exclusion of his confession to Francois on the ground that the confession was the involuntary result of Francois's "implied offer of leniency."
Had the confession been challenged as involuntary, the prosecution would have been required to prove by a preponderance that it was voluntary. (Lego v. Twomey (1972) 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618; Colorado v. Connelly (1986) 479 U.S. 157, 168-169, 107 S.Ct. 515, 93 L.Ed.2d 473; People v. Markham (1989) 49 Cal.3d 63, 71, 260 Cal.Rptr. 273, 775 P.2d 1042.) Even an actual promise of leniency does not by itself invalidate a confession. "[N]o single factor is dispositive in determining voluntariness, but rather courts consider the totality of circumstances." (People v. Williams (1997) 16 Cal.4th 635, 661, 66 Cal.Rptr.2d 573, 941 P.2d 752.) "[A]n improper promise of leniency does not render a statement involuntary unless, given all the circumstances, the promise was a motivating *406 factor in the giving of the statement." (People v. Vasila (1995) 38 Cal. App.4th 865, 874, 45 Cal.Rptr.2d 355.) "In general, any promise made by an officer or person in authority, express or implied, of leniency or advantage to the accused, if it is a motivating cause of the confession, is sufficient to invalidate the confession and to make it involuntary and inadmissible as a matter of law. In identifying the circumstances under which this rule applies, we have made clear that investigating officers are not precluded from discussing any advantage or other consequence that will naturally accrue in the event the accused speaks truthfully about the crime. The courts have prohibited only those psychological ploys which, under all the circumstances, are so coercive that they tend to produce a statement that is both involuntary and unreliable." (People v. Ray (1996) 13 Cal.4th 313, 339-340, 52 Cal. Rptr.2d 296, 914 P.2d 846, citations and quotation marks omitted.) "When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, the subsequent statement will not be considered involuntarily made." (People v. Thompson (1990) 50 Cal.3d 134, 170, 266 Cal.Rptr. 309, 785 P.2d 857, quotation marks omitted.)
Early on in his interview of defendant, Francois told defendant that he already knew "what happened" between defendant and Vanessa. "There is a situation between you and your daughter. Now here are your choices at this point. You can either try and explain it to me, to make it make sense, because I already know what happened. I already know that you were having sex with Vanessa. Your options here today, if you wanna do something for yourself, to try and rectify a situation that's already bad, is to explain to me so that I can tell the DA why this was going on. Were you outta your right mind at the time, or where [sic] you thinking she was somebody else, or what. You know, there's an explanation, you know. What, what is it Joel? It's not that it didn't happen because it happened." (Emphasis added.) Defendant did not respond to this statement by confessing. He continued to deny ever having had sex with Vanessa. It was only after Francois revealed that he had tape-recorded Vanessa's telephone conversation with defendant that defendant immediately confessed.
Defendant maintains that Francois's mention of "the DA" was an implied offer of leniency. We disagree. Defendant's trial counsel could have rationally concluded that a motion to suppress the confession as involuntary had little hope of success because the evidence established that Francois's reference to "the DA" was not a prohibited "offer of leniency" and did not motivate defendant's confession. Francois's statement to defendant appeared to be aimed at pointing out that defendant's disclosure of any potentially excusing or mitigating facts could be to defendant's benefit. The "benefit" identified by Francois (i.e., transmission of defendant's "explanation" to "the DA") "flows naturally" from the making of the statement (i.e., defendant's explanation to Francois). The record also reflects that Francois's statement about "the DA" did not motivate defendant's confession. Defendant continued to issue complete denials after Francois's statement about "the DA," and his confession was obviously triggered instead by Francois's revelation that he had a tape of the incriminating telephone conversation between defendant and Vanessa. On this record, defendant's trial counsel was not deficient in failing to bring a suppression motion. Similarly, any deficiency was not prejudicial because there is no reasonable probability that the motion would have succeeded since there was no promise of leniency and Francois's alleged implied promise did not motivate defendant's confession.

B. INSTRUCTIONS REGARDING VANESSA'S TESTIMONY
Defendant claims that the trial court erred in failing to instruct the jury that *407 Vanessa was an accomplice whose testimony required corroboration and should be viewed with caution.[3] We agree but find the error harmless.
The general rules regarding accomplice testimony are settled. "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof, [¶] An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Pen.Code, § 1111.) "The burden is on the defendant to prove by a preponderance of the evidence that a witness is an accomplice." (People v. Fauber (1992) 2 Cal.4th 792, 834, 9 Cal.Rptr.2d 24, 831 P.2d 249.) "Whether a person is an accomplice within the meaning of section 1111 presents a factual question for the jury unless the evidence permits only a single inference. Thus, a court can decide as a matter of law whether a witness is or is not an accomplice only when the facts regarding the witness's criminal culpability are clear and undisputed." (People v. Williams (1997) 16 Cal.4th 635, 679, 66 Cal.Rptr.2d 573, 941 P.2d 752, citation and quotation marks omitted.) "When there is sufficient evidence that a witness is an accomplice, the trial court is required on its own motion to instruct the jury on the principles governing the law of accomplices." (People v. Frye (1998) 18 Cal.4th 894, 965-966, 77 Cal.Rptr.2d 25, 959 P.2d 183, citations omitted.) These principles are "(1) that the testimony of the accomplice witness is to be viewed with distrust, and (2) that the defendant cannot be convicted on the basis of the accomplice's testimony unless it is corroborated." (People v. Zapien (1993) 4 Cal.4th 929, 982, 17 Cal.Rptr.2d 122, 846 P.2d 704, citation and quotation marks omitted.)
It has also long been the general rule that a voluntary co-participant in the act of incest who is aware of the wrongfulness of the act is an accomplice. Incest is defined by statute as a crime with two indistinguishable participants. "Persons being within the degrees of consanguinity within which marriages are declared by law to be incestuous and void, ... who commit fornication or adultery with each other, are punishable by imprisonment in the state prison." (Pen. Code, § 285, emphasis added.) This statutory language clearly contemplates that both participants are guilty of the crime of incest.[4] Accordingly, the California Supreme Court has held that, "although a person cannot commit incest or sodomy with himself, a witness who has participated in those crimes voluntarily and with knowledge of the wrongfulness of his act is an accomplice whose testimony must be corroborated." (People v. Wayne (1953) 41 Cal.2d 814, 826, 264 P.2d 547; People v. Adinolfi (1930) 106 Cal.App. 261, 262, 289 P. 176.)
Vanessa participated in the charged acts of incest with defendant. Since there was substantial but not undisputed evidence that she did so voluntarily and with knowledge of the wrongfulness of her acts, a question of fact arose as to whether she was an accomplice and the trial court was required, under the long-accepted *408 general rule, to give accomplice instructions. Notwithstanding the straightforward application of this general rule, the Attorney General asserts that there is a categorical exception to the general rule where the witness who has participated in the act of incest is under the age of 18. While the Attorney General's position is supported by a line of appellate cases, these cases apply a faulty analysis to this issue which is at odds with the analysis applied to similar issues in other cases.[5] We apply the appropriate analysis to this issue and reach the opposite conclusion. Consequently, we depart from the line of cases which supports the Attorney General's position.
The first mention of this issue appeared in dicta in a 1904 California Supreme Court decision. In People v. Stratton (1904) 141 Cal. 604, 75 P. 166, a father was prosecuted for incest with his daughter. At the trial, evidence was admitted that the daughter had not consented to the act and the trial court instructed the jury that it could convict the father of incest even if the daughter did not consent because incest did not require the consent of both parties. (Stratton at p. 607, 75 P. 166.) On appeal, the father contended that incest could not be committed without the consent of both parties. (Stratton at pp. 607-608, 75 P. 166.) Rejecting the decisions of sister states which had apparently held that incest required the consent of both parties, the California Supreme Court concluded that incest could occur without the consent of both parties. Its analysis included the following dictum.[6] "If the prosecutrix, being of the legal age of consent, consents to the incestuous intercourse, unquestionably she is particeps criminis, and her testimony, like that of any other accomplice, uncorroborated, is insufficient to uphold a conviction. [Citation.] But if, upon the other hand, she is the victim of force, or fraud, or undue influence, or is too young to be able to give legal assent, so that she does not willfully and willingly join in the incestuous act, she cannot be regarded as an accomplice. [Citation.] In this case the instructions fairly left this matter open to the determination of the jury." (People v. Stratton, supra, 141 Cal. 604, 609, 75 P. 166, emphasis added.) The court did not specify the "instructions" to which it alluded. When Stratton was decided, an act of sexual intercourse with a female under the age of 16 was an act of rape under Penal Code section 261. (Stats.1897, ch. 139, § 1, p. 201.) Penal Code section 261 was amended in 1913 to change the age requirement *409 for this type of rape to "under the age of eighteen years." (Stats.1913, ch. 122, § 1.)
Exactly what the Stratton court meant by "too young to be able to give legal assent" was not clarified in the Stratton opinion. A leading out-of-state decision a few years later made a similar statement, but it supported this statement with an analysis based explicitly on the well-accepted rule that a person under the age of 14 is presumptively incapable of committing a crime. (State v. Stalker (1915) 169 Iowa 396, 151 N.W. 527; see Pen.Code, § 26.) In Stalker, the Iowa Supreme Court held that a 13-year-old participant in an act of incest could be considered an accomplice if there was evidence that she knew of the wrongfulness of her conduct. (Stalker at p. 527.)
The first California appellate case which actually addressed this issue squarely held that females under the age of 18 can never be accomplices to incest. In People v. Stoll (1927) 84 Cal.App. 99, 257 P. 583, the Second District Court of Appeal inferred that Stratton's "too young to be able to give legal assent" reference was based on what the Second District referred to as the "age of consent" which it claimed was set forth in Penal Code section 261. In Stoll, a father was convicted of committing incest with his daughter when she was 14 and 15 years old. (Stoll at pp. 100-101, 257 P. 583.) On appeal, the father asserted, as defendant does here, that the trial court had erred in refusing to give accomplice instructions. After quoting the above-quoted dicta from Stratton, the Second District rejected this contention. "Of course, the incestuous act referred to is an act of sexual intercourse. The age at which an unmarried female is able to give legal assent to such an act is eighteen years. (Pen.Code, sec. 261, subd. 1.) Appellant insists that since under section 26 of the Penal Code those over fourteen years of age are capable of committing crime, and that under section 285 no exception is made of children above the age of fourteen years, a girl under eighteen and over fourteen who commits fornification [sic] with a person within the degrees of consanguinity within which marriage is declared by law to be incestuous is guilty of incest, and therefore would be an accomplice in a case wherein the other party to the act was a defendant. This argument overlooks the fact that if the female is the victim and has not willfully and willingly joined in the act she is not an accomplice, and that under our statutes, being under the age of legal consent to such an act, regardless of her actual assent thereto, she cannot be said as a matter of law to have willfully and willingly joined in the intercourse." (Stoll at p. 102, 257 P. 583.)
Stoll was subsequently followed by a line of appellate cases using the same reasoning or simply relying on Stoll. (People v. Hurd (1970) 5 Cal.App.3d 865, 875 fns. 5, 6, 85 Cal.Rptr. 718, [dicta]; People v. Batres (1969) 269 Cal.App.2d 900, 903-904, 75 Cal.Rptr. 397; People v. Bowles (1960) 178 Cal.App.2d 317, 322, 2 Cal.Rptr. 896; People v. John (1950) 99 Cal.App.2d 236, 237-238, 221 P.2d 333 [16-year-old participant in incest not accomplice]; People v. Pettis (1950) 95 Cal.App.2d 790, 793-794, 213 P.2d 731 [17-year-old participant in incest was not accomplice]; People v. Hamilton (1948) 88 Cal.App.2d 398, 401, 198 P.2d 907 [16-year-old participant in incest not accomplice]; People v. Lachuk (1935) 5 Cal. App.2d 729, 731, 43 P.2d 579.) The reasoning of Stoll and its progeny has never been challenged. However, we must challenge that reasoning because there is no legal validity to Stoll's underlying premisethat females under the age of 18 cannot voluntarily participate in an act of incest because they are below the "age of consent."
Nowhere in the versions of Penal Code section 261 which were in effect prior to 1913 and from 1913 to 1970 was there any reference to the "age of consent." Instead, from 1913 to 1970, Penal Code section 261 simply included within its definition of "rape" an act of sexual intercourse *410 with a female under the age of 18. Penal Code section 261 was amended in 1970. The provision characterizing an act of sexual intercourse with a female under the age of 18 as "rape" was removed from Penal Code section 261. Penal Code section 261.5 was enacted to prohibit the same act, and the new statute characterized the prohibited act not as "rape" but as "unlawful sexual intercourse." (Stats.1970, ch. 1301, §§ 1, 2, pp. 2405-2406.) "By its adoption of [former Penal Code] section 261.5 [in 1970] the Legislature necessarily acknowledged the obvious truism that minor females are fully capable of freely and voluntarily consenting to sexual relations. If this was not so, the charge brought in these cases would uniformly be one of forcible rape. (§ 261.) The statute makes no statement about the girl's ability to consent. Rather, the statute merely prohibits the act of sexual intercourse with an underage female not the wife of the perpetrator rejecting consent as a defense." (Michael M. v. Superior Court (1979) 25 Cal.3d 608, 614, 159 Cal.Rptr. 340, 601 P.2d 572, emphasis added.) In 1993, Penal Code section 261.5 was amended to render the offense gender-neutral. It now prohibits an act of sexual intercourse with a "person" under the age of 18. (Stats.1993, ch. 596, § 1; Pen.Code, § 261.5, subd. (a).)
No other authority exists to support the proposition that females (or males, for that matter) under the age of 18 categorically or presumptively lack the legal capacity to "consent" to criminal sexual acts including sexual intercourse.[7] The only individuals who are even presumptively incapable of committing a crime solely due to their age are those individuals, both male and female, who are under the age of 14.[8] "All persons are capable of committing crimes except those belonging to the following classes: [¶] One  Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness." (Pen.Code, § 26.) This rebuttable statutory presumption has existed without substantive alteration since 1872.
Because this presumption is rebuttable, even a child under the age of 14 may be found to have committed a crime if there is clear and convincing evidence *411 of the child's knowledge of the wrongfulness of his or her conduct. (In re Manuel L. (1994) 7 Cal.4th 229, 232, 27 Cal.Rptr.2d 2, 865 P.2d 718.) Numerous cases have held that a child under the age of 14 can be found criminally liable for committing sexual acts so long as the child knew of the wrongfulness of his or her conduct. (In re Billie Y. (1990) 220 Cal. App.3d 127, 132, 269 Cal.Rptr. 212 [13-year-old boy committed Penal Code section 288, subdivision (a) offense on 6-year-old]; In re Paul C. (1990) 221 Cal.App.3d 43, 49, 270 Cal.Rptr. 369 [13-year-old boy committed Penal Code section 288, subdivision (a) offense and Penal Code section 288a, subdivision (b)(1) offense on 9-year-old]; In re Gladys R. (1970) 1 Cal.3d 855, 869, 83 Cal.Rptr. 671, 464 P.2d 127 [12-year-old girl could be held criminally liable for annoying or molesting a minor in violation of former Penal Code section 647a if it could be proven that she knew of the wrongfulness of her conduct].) In In re Tony C. (1978) 21 Cal.3d 888,148 Cal.Rptr. 366, 582 P.2d 957, the California Supreme Court concluded that a thirteen-year-old boy could be found to have committed a forcible rape because there was clear proof that he knew that his act was wrongful. (Tony C. at pp. 900-901, 148 Cal.Rptr. 366, 582 P.2d 957.) Hence, a child, even one under the age of 14, can be found criminally liable for sexual conduct, including a willful act of sexual intercourse, if the child knew the act was wrongful.
Since a child can be held criminally liable for voluntarily engaging in a prohibited sexual act that the child knew to be wrong, it follows that such a child generally may be found to be an accomplice to another person who engages in a prohibited sexual act with the child.[9] For example, in People v. Singh (1932) 121 Cal.App. 107, 8 P.2d 898, the Fourth District held that the testimony of a 15-year-old boy who had willingly participated in an act of sodomy with the defendant was insufficient to support a conviction because the boy was an accomplice to the act of sodomy and there was no corroboration of his testimony. (Singh at pp. 108-109, 8 P.2d 898.) Citing Penal Code section 26, the court rejected a similar claim as to a separate act by the defendant with a boy of 13 because there was no evidence that the 13-year-old knew of the wrongfulness of the act. Consequently, there was no evidence that the 13-year-old was an accomplice. (Singh at pp. 110-111, 8 P.2d 898.) Similarly, in People v. McRae (1947) 31 Cal.2d 184, 187 P.2d 741, the California Supreme Court opined that a 15-year-old boy who voluntarily participated in an act of sodomy knowing of the act's wrongfulness was an accomplice whose testimony would be insufficient to support a conviction without corroboration.[10] (McRae at pp. 185-186, 187 P.2d 741; accord People v. Robbins (1915) 171 Cal. 466, 469, 472, 154 P. 317.) Under these cases, a minor who is a voluntary participant in a criminal *412 sexual act may be considered an accomplice.
Penal Code section 285 criminalizes the participation of both actors in the act of incest, and the general rule is that a person who is 14 years old or older is capable of committing a sexual offense. The law recognizes no categorical exception to the general rule based simply on the fact that the participant in the act of incest is under the age of 18. Thus, we hold that any person aged 14 or older who voluntarily participates with another person in an act of incest is an accomplice. Our holding should not be misunderstood to mean that prosecutors should initiate criminal prosecutions of minors for participating in acts of incest with adults. Such prosecutions would offend our basic values, and we are confident that prosecutors will properly exercise their discretion in furtherance of justice. We hold only that minors who voluntarily participate in acts of incest are legally prosecutable under Penal Code section 285, and therefore may be found to be accomplices. As Vanessa was sixteen years old at the time she participated in the acts of incest with defendant and there was evidence which could have supported a jury finding that her participation in these acts was voluntary, the trial court was obligated to give accomplice instructions. Its failure to do so was error.
"However, a conviction will not be reversed for failure to instruct on these principles if a review of the entire record reveals sufficient evidence of corroboration." (People v. Frye, supra, 18 Cal.4th at pp. 965-966, 77 Cal.Rptr.2d 25, 959 P.2d 183.) "Such evidence may be slight and entitled to little consideration when standing alone. It is only required that the evidence tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [accomplice] is telling the truth." (People v. Sanders (1995) 11 Cal.4th 475, 535, 46 Cal.Rptr.2d 751, 905 P.2d 420, citations, ellipses and quotation marks omitted.) "The necessary corroborative evidence for accomplice testimony can be a defendant's own admissions." (People v. Williams, supra, 16 Cal.4th at p. 680, 66 Cal.Rptr.2d 573, 941 P.2d 752.)
It is not reasonably probable that accomplice instructions would have produced a different result in this case. (People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.) First, Vanessa was not an accomplice as a matter of law. Her half-sister testified that Vanessa told her that defendant "forced" her to have sexual intercourse with him. Under Stratton's holding, a participant in incest who is "forced" to participate is not an accomplice because he or she does not voluntarily participate in the act. Complete accomplice instructions would have required the jury to preliminarily resolve whether Vanessa voluntarily participated in the acts of incest. Although defendant repeatedly asserted that Vanessa had willingly participated in the acts of incest, the jury discounted much of his testimony, and it is reasonably probable that a properly instructed jury would have discredited his contention that Vanessa was a willing participant in these acts and found her not to be an accomplice.
Second, assuming a properly instructed jury would have found that Vanessa willingly participated in the acts, it is not reasonably probable that instructions that her testimony required corroboration and should be viewed with caution would have produced a different result. The jury clearly subjected Vanessa's testimony to great scrutiny and credited her allegations only where they were corroborated. Vanessa testified that there were 50 to 60 acts of incest which occurred on a weekly basis over a period beginning in July and ending in early February. Alexis's June 13 birth corroborated Vanessa's testimony that defendant had engaged in sexual intercourse with Vanessa during the week of September 13. The jury did not return a guilty verdict on any count charging an *413 offense occurring before that week. Defendant admitting having some sort of sexual relationship with Vanessa but claimed that this relationship ended no later than mid-November when he became involved with Rosales. Rosales corroborated defendant's claim that his relationship with her began around that time. Again, applying considerable scrutiny to the evidence before it, the jury did not return guilty verdicts on any counts charging acts occurring after mid-November. Further, the corroborative evidence before the jury was very substantial. DNA evidence proved that Alexis was defendant's daughter. Defendant testified that he had engaged in sexual intercourse with Vanessa on one occasion in October, and he admitted on two tape-recordings that he had done so on many occasions over a lengthy period of time.
On this record, it is not reasonably probable that the trial court's erroneous failure to give the required accomplice instructions prejudiced defendant.

C. INSTRUCTION ON CONSANGUINITY ELEMENT
Defendant contends that reversal per se is merited because the trial court allegedly erred in instructing the jury on the consanguinity element of incest when it told the jury that a father-daughter relationship satisfied the consanguinity requirement. We find no error.
"Persons being within the degrees of consanguinity within which marriages are declared by law to be incestuous and void, ... who commit fornication or adultery with each other, are punishable by imprisonment in the state prison." (Pen. Code, § 285.) "Marriages between parents and children ... are incestuous, and void from the beginning, whether the relationship is legitimate or illegitimate." (Fam.Code, § 2200, emphasis added.) Family Code section 2200 establishes as a matter of statutory law that the relationship between a father and a daughter is within the degree of consanguinity specified in Penal Code section 285. Hence, as a matter of statutory law, a father who has sexual intercourse with his daughter commits incest.
The court correctly instructed the jury on this point of statutory law. "Every person who has sexual intercourse with another person within the degree of blood relationship prohibited by law is guilty of incest. [¶] You are instructed that the relationship between father and daughter is within the degree of blood relationship prohibited by law." (Emphasis added.) A trial court does not err when it instructs the jury "on a point of statutory law  a point not open to dispute...." (People v. Brown (1988) 46 Cal.3d 432, 443, 250 Cal.Rptr. 604, 758 P.2d 1135.) A court errs when it goes beyond the statutory law and instructs the jury regarding the facts of the case before it. (Brown at p. 444, fn. 6, 250 Cal.Rptr. 604, 758 P.2d 1135.) Here, the court did not make the mistake of instructing the jury regarding the relationship between defendant and Vanessa. It merely informed the jury of the statutory law which established that the relationship between a father and a daughter was within the requisite "degrees of consanguinity." The court's instruction left it for the jury to decide the only factual question as to this elementwhether defendant and Vanessa were father and daughter. There was no error.

D. THE PRIOR CONVICTION FINDING
Defendant attacks the prior conviction finding on two grounds. He claims that there was insufficient evidence that the prior conviction was for a serious or violent felony because lewd acts on a child are not the same as lewd acts with or upon a child. Defendant also challenges the finding on the ground that he was wrongly denied a jury trial on the issue of whether he had suffered the prior conviction.

*414 1. SUFFICIENCY OF THE EVIDENCE
In 1989, defendant suffered a conviction for violating Penal Code section 288, subdivision (a). The felony complaint charged defendant with committing a lewd act "upon and with the body" of a child in violation of Penal Code section 288, subdivision (a). Defendant entered an unconditional guilty plea to the charge. The abstract of judgment states that the conviction was for "lewd conduct upon child." Penal Code section 288, subdivision (a) prohibits commission of "any lewd or lascivious act ... upon or with the body, or any part or member thereof, of a child who is under the age of 14 years" with the requisite intent. (Pen.Code, § 288, subd. (a).)
Defendant claims that this evidence did not establish that his prior conviction was for a "serious" felony within the meaning of Penal Code section 1192.7, subdivision (c) or a "violent" felony within the meaning of Penal Code section 667.5, subdivision (c). A conviction for committing a "[l]ewd or lascivious act on a child under the age of 14 years" is a "serious" felony conviction. (Pen.Code, § 1192.7, subd. (c)(6).) A conviction for committing "[l]ewd acts on a child under the age of 14 years as defined in Section 288" is a "violent" felony conviction. (Pen.Code, § 667.5, subd. (c)(6).)
Defendant reasons that his conviction for violating Penal Code section 288, subdivision (a) is insufficient to prove that the prior conviction was a serious or violent one because Penal Code section 288, subdivision (a) prohibits committing a lewd act "upon or with the body ... of a child" while serious and violent felony convictions include only convictions for committing a lewd act "on a child." In this context, the word "upon" is a synonym for "on." (Webster's Collegiate Diet. (10th ed.1993) pp. 811, 1298.) Defendant's 1989 guilty plea admitted an allegation that he had committed a lewd act "upon and with" the body of a child. Because defendant was charged with and admitted committing a lewd act both "upon and with" a child and "upon" is synonymous with "on," defendant's plea necessarily established that he had committed a lewd act "on" a child. It is therefore unnecessary for us to delve into defendant's intricate linguistic argument based on the differences between the words "on" and "with." The evidence was sufficient to support the court's finding.

2. JURY TRIAL RIGHT
Prior to the discharge of the jury, the court incorrectly informed defendant of his trial rights on the prior conviction allegation. "The defendant is entitled to a jury on the issue of identity regarding the prior conviction but is not entitled to a jury trial with regard to any other issue surrounding the proof of the prior conviction." Defendant acknowledged his understanding of his right to a jury trial on the identity issue. He gave up his right to a trial on identity and stipulated "only" to identity. The precise stipulation was: "[Y]ou are the person named in the violation alleged to have occurred in the Superior Court Docket 135288, State of California, County of Santa Clara in which you were convicted of a violation of Penal Code section 288(A)." Both counsel and defendant personally endorsed this stipulation in open court outside the presence of the jury. After the jury had been discharged, the court tried the prior conviction allegation. The prosecution submitted documentary evidence that defendant had suffered a 1989 conviction for violating Penal Code section 288, subdivision (a). The court found the allegation true.
The issue of what role the jury plays under the version of Penal Code section 1025 which took effect in January 1998 was addressed by the California Supreme Court in People v. Kelii (1999) 21 Cal.4th 452, 87 Cal.Rptr.2d 674, 981 P.2d 518. "This leaves the final question of exactly what role the jury does play under section 1025. Perhaps because the final statutory *415 enactment was a compromise, with the Legislature reducing, but not entirely eliminating, the jury's role, the answer is not readily apparent. The trial court might choose to determine first whether the defendant is the person who suffered the conviction. A determination that the defendant is not that person would clearly end the matter. If, however, as would usually be the case, the court finds the defendant is that person, the jury apparently would then make a determination like the one it made in this case-that the defendant suffered the prior burglary and attempted burglary convictions. The court would, however, instruct the jury to the effect that the defendant is the person whose name appears on the documents admitted to establish the conviction. This procedure would appear to leave the jury little to do except to determine whether those documents are authentic and, if so, are sufficient to establish that the convictions the defendant suffered are indeed the ones alleged. Whether this role makes sense is not for us to say." (Kelii at pp. 458-59, 87 Cal.Rptr.2d 674, 981 P.2d 518.)
Under either the prior version of Penal Code section 1025 or the current version of Penal Code section 1025, it is clear that the trial court in this case erred.[11] However, this violation of defendant's statutory right to a jury trial does not merit reversal because it is not reasonably probable that the prior conviction allegation would have been found not true in the absence of the error. (People v. Vera (1997) 15 Cal.4th 269, 277-281, 62 Cal.Rptr.2d 754, 934 P.2d 1279; People v. Wims (1995) 10 Cal.4th 293, 314-315, 41 Cal.Rptr.2d 241, 895 P.2d 77.) Defendant stipulated that he was the person who had suffered the 1989 Penal Code section 288, subdivision (a) conviction. The issue of whether the conviction was a "serious" or "violent" one was not an issue for the jury under either version of Penal Code section 1025. The documentary evidence was undisputed and unambiguously established that defendant had suffered the 1989 Penal Code section 288, subdivision (a) conviction. There is not the slightest possibility that the allegation would have been found not true if the very narrow remaining issue had been placed before a jury instead of before the trial judge. The error was harmless.

CONCLUSION
The judgment is affirmed.
WUNDERLICH, J., concurs.
BAMATTRE-MANOUKIAN, Acting P.J., concurs in the judgment only.
NOTES
[1] At trial, Vanessa testified that the sexual relationship began in July. At the preliminary examination, she testified, at one point, that the relationship began "three months" after she moved in with defendant and, at another point, she corrected herself and stated that it had begun "[a] month" after she arrived at defendant's home. Vanessa did not learn until after the preliminary examination that a DNA test proved defendant to be her second child's father.
[2] As the prosecutor pointed out in her closing argument, Alexis's conception most likely occurred in the second week of September, nine months prior to Alexis's June 13 birth. Defendant's trial counsel conceded in his closing argument that September 13 was nine months prior to Alexis's birth but asserted that Alexis could have been a month early. Vanessa testified that Alexis was neither early nor late.
[3] Instead, the court instructed the jury that "[t]estimony by one witness, which you believe concerning any fact, is sufficient for the proof of that fact." It also instructed the jury that "[i]t is not essential to a conviction of the charge of incest that the testimony of the witness with whom sexual relations is alleged to have been committed be corroborated by other evidence."
[4] First enacted in 1872, the incest statute has not been substantively changed. The only changes that have ever been made to the statute have been alterations in the level of punishment. (Stats.1921, ch. 101, § 1, p. 96; Stats.1976, ch. 1139, § 174, p. 5110.) The offense has always been a straight felony.
[5] Defendant challenges the Attorney General's position based on what he calls "the modern reasoning" of In re Jerry M. (1997) 59 Cal. App.4th 289, 69 Cal.Rptr.2d 148. The issue before us was not raised, addressed or resolved in Jerry M. The court in Jerry M. was faced with a question of statutory interpretation of Penal Code section 288. It resolved the question of whether an 11-year-old boy could be found to have violated Penal Code section 288 when he touched the breasts of two 12-year-old girls and a 13-year-old girl. Because there was evidence that the boy was aware of the wrongfulness of his conduct, the court held that his act potentially came within the purview of Penal Code section 288. Nevertheless, the court ultimately concluded that there was insufficient evidence that the boy had harbored the requisite specific intent and reversed the finding that he had violated Penal Code section 288. Jerry M. did not hold or infer that a minor victim of a Penal Code section 288 offense was an accomplice. Such a holding would be inconceivable. (See footnote 9, infra.)
[6] The court's opinion does not indicate the age of the daughter. The information alleged that she was "a female child." However, the court's indication that the accomplice issue was "fairly left ... open to the determination of the jury" implies that the issue revolved around the validity of the daughter's testimony regarding her actual lack of consent rather than the simple question of the daughter's age. This implication is further supported by the fact that this discussion occurs in the course of an analysis of the father's claim that his act was not incest because his daughter did not actually consent. The court's summary of the evidence reflects that there was corroboration for the daughter's testimony, but it does not mention whether the jury was instructed on the possible need for corroboration.
[7] All acts of sexual intercourse in which one of the participants is under the age of 18 are criminal unless the participants are married to one another. (Pen.Code, § 261.5, subd. (a).)
[8] In one opinion, the Second District held in 1931 that the defendant's 14-year-old and 16-year-old daughters who had participated in acts of incest were not accomplices because they could not be tried as adults but only in juvenile court and therefore were not subject to prosecution on the same charge as the defendant. (People v. Johnson (1931) 115 Cal.App. 704, 706-707, 2 P.2d 216.) On that invalid theory, no minor could ever be an accomplice to any crime.

The California Supreme Court made an attempt to distinguish Johnson without overruling it just a year later. In People v. McCollum (1932) 214 Cal. 601, 7 P.2d 301, the defendant was convicted of incest and oral copulation with his 16-year-old daughter. The only issue before the California Supreme Court was whether the daughter was an accomplice to the oral copulation count. At that time, the oral copulation statute criminalized "[a]ny person participating in the act of copulating the mouth of one person with the sexual organ of another...." (Stats.1921, ch. 848, § 2, p. 1633.) In McCollum, the California Supreme Court offered the following response to the Attorney General's reliance on Johnson. "We are of the view that . . . the opinion in [Johnson ], while correct in its application to the facts there considered, does not apply to the present situation. Any person participating in the act forbidden by section 288a of the Penal Code is guilty of the offense. The prosecutrix in this case, being over the age of fourteen years, was capable of committing the crime. (Pen.Code, sec.26, subd. 1.) She was therefore liable to prosecution for the identical offense charged against the defendant on trial in the cause in which her testimony was given. (Pen.Code, sec. 1111.)" (McCollum at p. 602, 7 P.2d 301.) The California Supreme Court held in McCollum that the 16year-old daughter was an accomplice to the oral copulation count, and, because there was no corroborating evidence, it reversed the oral copulation count. (McCollum at p. 602, 7 P.2d 301.) The court did not attempt to explain why the oral copulation statute was different from the incest statute in this regard.
[9] There are, of course, exceptions to this general rule. "It has long been settled that where a penal statute expressly outlaws conduct against minors, a minor who is a victim of the proscribed conduct is not an accomplice and the jury need not be instructed that the minor's testimony requires corroboration." (People v. Mena (1988) 206 Cal.App.3d 420, 425, 254 Cal.Rptr. 10, emphasis added.) Penal Code section 288, for instance, expressly outlaws conduct against minors. The reason why victims of such offenses are not considered accomplices is because statutes which prohibit sexual conduct with minors contain clear indications that the Legislature's intent was to protect minors from sexual predators not to criminalize the minor's participation in the predatory act. (Cf. In re Meagan R. (1996) 42 Cal.App.4th 17, 23-25, 49 Cal. Rptr.2d 325; The Queen v. Tyrrell (1894) 1 Q.B. 710, 712.) In contrast, Penal Code section 285 does not expressly outlaw conduct with minors and contains no other indication that the Legislature's intent in enacting the incest statute was premised on the age of the participants in the act of incest.
[10] The case was a prosecution appeal from a dismissal based on the absence of corroboration at the preliminary examination. The California Supreme Court reversed because it concluded that corroboration was not necessary in order to support a probable cause finding. (McRae at p. 187, 187 P.2d 741.)
[11] It is not necessary for us to decide in this case which of the two versions applied here. Defendant's crimes occurred long before the amendment of Penal Code section 1025, but his trial occurred after the amendment. The parties and the trial court assumed below that the 1998 version applied, and neither party challenges this assumption on appeal.